890 P.2d 341

**STATE of Idaho, Plaintiff–Respondent,**

v.

**David HOLDEN, Defendant–Appellant.**

No. 20316.

Court of Appeals of Idaho.

Jan. 19, 1995.

Rehearing Denied March 3, 1995.

Petition for Review Denied March 21, 1995.

Jonathan B. Hull, Kootenai County Public Defender; Brian D. Long, Public Defender, Coeur d'Alene, for appellant. Brian D. Long argued.

Larry EchoHawk, Atty. Gen., Michael J. Kane, Deputy Atty. Gen., Boise, for respondent. Michael J. Kane argued.

LANSING, Judge.

In March 1992, David Holden's wife, T.H., reported to police that he had sexually assaulted her. Holden was arrested and charged by information with nine felonies: one count of rape, I.C. § 18–6101 (subsequently amended 1994); six counts of forcible sexual penetration by use of a foreign object, I.C. § 18–6608; and two counts of infamous crime against nature, I.C. § 18–6605. At the ensuing jury trial Holden was acquitted on three counts of forcible sexual penetration by use of a foreign object and was convicted on the six remaining charges. The district court sentenced Holden, on each count, to a unified term of twenty-five years with a five-year minimum period of confinement. The court ordered that the sentences on all counts would be served concurrently.

On appeal, Holden asserts that the district court should have dismissed all charges against him due to the prosecution's loss of allegedly exculpatory evidence prior to trial. We hold that the loss of the evidence did not amount to a deprivation of due process and thus did not warrant dismissal of the charges. Holden also asserts that his prosecution for two counts of infamous crime against nature predicated upon sexual acts performed with his wife violates his constitutional right of privacy. Based upon United States Supreme Court precedent, we recognize the existence of a constitutional right of marital privacy and hold that the two convictions for the infamous crime against nature were obtained in violation of this right and, therefore, must be vacated. Holden's convictions on the remaining four charges are affirmed.

## I.

### LOSS OF EVIDENCE

Promptly following T.H.'s report of the attack, the police responded and arrested Holden. While at the Holden residence, the police seized a number of items as evidence, including two photographs from Holden's bureau drawer. These photos depicted T.H. nude and in sexually explicit positions.

■ Approximately one week later the investigating officer, after consulting with the prosecutor in charge of the case, returned these photos to T.H. Some months later, after discovering that the photographs were no longer in the possession of the police or the prosecutor, defense counsel filed a motion to dismiss all charges on grounds that the State had lost exculpatory evidence and thereby deprived Holden of due process. After a number of hearings and unsuccessful searches for the photos, the district court denied the motion to dismiss. Holden argues on appeal that the district court erred in not dismissing the charges.

■ The due process guaranties of the Fifth and Fourteenth Amendments to the United States Constitution require the government to produce to the defendant evidence that is material and exculpatory. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). Due process interests also impose upon the government a duty to preserve exculpatory evidence for potential use by the defendant. *Arizona v. Youngblood*, 488 U.S. 51, 55, 109 S.Ct. 333, 335, 102 L.Ed.2d 281 (1988); *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *State v. Fain*, 116 Idaho 82, 91, 774 P.2d 252, 261 (1989), *cert. denied*, 493 U.S. 917, 110 S.Ct. 277, 107 L.Ed.2d 258 (1989); *State v. Bruno*, 119 Idaho 199, 202, 804 P.2d 928, 931 (Ct.App.1990). This duty to preserve evidence arises only with respect to evidence that possesses an exculpatory value which was apparent before the evidence was lost or destroyed and is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *Trombetta*, 467 U.S. at 488–89, 104 S.Ct. at 2533–34. When potentially exculpatory evidence has been lost by the government, the trial court must determine whether there has been a due process violation warranting remedial measures, which may include dismissal of the charges. *Trombetta*, 467 U.S. at 487, 104 S.Ct. at 2533; *Fain*, 116 Idaho at 91, 774 P.2d at 261.

■ If the evidentiary value of the lost or destroyed evidence cannot be ascertained, a due process violation is established if the court finds that: (a) the lost evidence likely was material, and (b) the State acted in bad faith in losing the evidence. *Youngblood*, 488 U.S. at 57–58, 109 S.Ct. at 337; *Fain*, 116 Idaho at 91, 774 P.2d at 261; *State v. Greathouse*, 119 Idaho 732, 735, 810 P.2d 266, 269 (Ct.App.1991). However, in some cases the content of the lost evidence is not unknown but, rather, can be established by other evidence or testimony. In that event, the determination of whether there has been a deprivation of due process turns upon the materiality of the lost evidence, and bad faith of the state need not be shown. *Youngblood*, 488 U.S. at 57, 109 S.Ct. at 337; *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196; *State v. Trumble*, 113 Idaho 835, 836–37, 748 P.2d 826, 827–28 (Ct. App.1987).

In the present case, the nature of the lost evidence was not unknown. The content of the photographs was not controverted, and was known to two police officers, the prosecutor and the victim. Presumably, Holden was also familiar with the photographs inasmuch as they were found with other personal belongings in his dresser drawer. Therefore, Holden's contention that the State's loss of the photographs deprived him of due process requires that we determine only whether the photographs were material.

■ Evidence is material for purposes of due process analysis if there is a reasonable probability that, had the evidence been available to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). A 'reasonable probability' is "a probability sufficient to undermine confidence in the outcome." *Id.*

Holden argues that the photos were material because they were relevant to his defense in two respects. First, he contends that they had impeachment value to discredit T.H. because the photos showed her voluntarily assuming a physical position that she allegedly told police was painful for her when Holden forced her into such a position on the night of the offenses. However, while T.H. may have made such a statement to police,

her trial testimony includes no statement that she was forced into such a position or that it caused her pain on the night in question. Accordingly, there was no trial testimony from T.H. that the photographs would have served to impeach in the suggested manner.

Second, Holden argues that the photographs were relevant to his defense that the sexual conduct for which he was prosecuted was consensual. Evidence is relevant to an issue in controversy if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. It was charged in the information that Holden committed rape by use of force or violence and that forcible sexual penetration by use of a foreign object was accomplished through use of force, violence, duress or threats against the victim. Therefore, evidence of T.H.'s consent would have been helpful for the defense of these charges.

We conclude, however, that the photographs would not have been sufficiently probative on this question of consent to have altered the outcome of the trial. It is not contended that the misplaced photographs were taken during or temporally close to the commission of the charged offenses. Therefore, they do not directly evidence T.H.'s consent on the night in question. The photographs arguably have some marginal relevance on a theory that they show the victim's willingness to engage in uninhibited and unconventional sexual conduct, making it more likely that she willingly participated in the acts giving rise to the charges.[1] However, at trial T.H. acknowledged that her past consensual marital relations with Holden had included unconventional acts, including fellatio and anal intercourse. This admission by the victim attenuated whatever evidentiary value the photographs might have had on the issue of consent.

Moreover, Holden was able to introduce descriptions of the photographs through the testimony of two policemen who had seen the photos. The jurors were thereby informed of the content of the photos although they could not view them.

Given the tenuousness of the photographs' potential probative value to show consent, and recognizing that the photos were described to the jury, we think it highly improbable that presentation of the photographs themselves would have changed the jury's verdict. Consequently, although the conduct of the police and the prosecutor in casually releasing the photographs is not to be condoned, we hold that the photos do not meet the constitutional standard of materiality and that the loss of this evidence did not deprive Holden of due process.

## II.

### RIGHT OF PRIVACY

Holden was convicted on two counts of violating I.C. § 18–6605.[2] That statute, which has not been changed in substance since its adoption in 1864 as part of the territorial laws, Laws of Territory of Idaho, Crimes and Punishments § 45 (1864), makes the infamous crime against nature punishable as a felony. The term, "infamous crime against nature" has been construed to include fellatio, *State v. Izatt,* 96 Idaho 667, 534 P.2d 1107 (1975); *State v. Carringer,* 95 Idaho 929, 523 P.2d 532 (1974); *State v. Altwatter,* 29 Idaho 107, 157 P. 256 (1916), and anal intercourse. *Id.; State v. Hayes,* 121 Idaho 232, 824 P.2d 163 (Ct.App.1992). The charges against Holden included both of these acts.

Holden challenges the constitutionality of I.C. § 18–6605. He argues that the application of that statute to private, consensual sexual relations between persons married to each other violates the right of privacy recognized by the United States Supreme Court in *Griswold v. Connecticut,* 381 U.S. 479, 85

---

1. The parties have not argued, and we therefore do not address, whether the photographs, if offered for this purpose, would have been inadmissible by terms of I.R.E. 412.

2. I.C. § 18–6605 provides: Every person who is guilty of the infamous crime against nature, committed with mankind or with any animal, is punishable by imprisonment in the state prison not less than five years.

S.Ct. 1678, 14 L.Ed.2d 510 (1965). Holden acknowledges that acts within the purview of Section 18–6605 can be prohibited constitutionally if the acts are accomplished by use of force, but he points out that the statute makes no distinction between consensual and nonconsensual acts. He argues, therefore, that the statute encompasses consensual conduct of married couples and is overbroad in its sweep, impermissibly intruding upon a constitutionally protected privacy interest.

## A. STANDING.

■ The State responds that Holden lacks standing to assert this constitutional challenge because the State's evidence at trial indicates that the victim did not consent to the acts constituting crimes against nature. The State correctly notes that generally, "when a statute can be applied to a person's conduct without violating any constitutional provision, he will not be heard to assert that the statute might be unconstitutional if applied to other types of behavior." *State v. Goodrick*, 102 Idaho 811, 812, 641 P.2d 998, 999 (1982). *See also United States v. Raines*, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960).

The State's argument, however, overlooks the fact that Holden has consistently maintained that the conduct in his case was consensual and so testified at trial. Because the statute does not specify that force is an element of the infamous crime against nature, or that consent is a defense, the jury was not instructed that Holden would be guilty only if T.H. did not consent to the alleged acts violating I.C. § 18–6605. The guilty verdicts on these counts, therefore, do not imply a finding that the acts were nonconsensual. The jury's findings that Holden committed other forcible acts (rape and penetration with a foreign object) on the same night cannot be taken as a finding that the acts of fellatio and anal intercourse for which he was charged under Section 18–6605 were also forced, particularly in view of the fact that the jury also acquitted Holden on some of the charges for which force was an element. Therefore, it is possible that Holden was convicted of the infamous crime against nature for private, consensual relations with

his wife. It is thus apparent that Holden is asserting his own rights, not merely the rights of a hypothetical third person, in contesting the constitutionality of I.C. § 18–6605. *See Arizona v. Bateman*, 113 Ariz. 107, 109, 547 P.2d 6, 8 (1976), *cert. denied*, 429 U.S. 864, 97 S.Ct. 170, 50 L.Ed.2d 143 (1976); *State v. Pilcher*, 242 N.W.2d 348, 354–56 (Iowa 1976); *Schochet v. State*, 75 Md.App. 314, 541 A.2d 183, 185 (1988), *rev'd on other grounds* 320 Md. 714, 580 A.2d 176 (1990).

The authority upon which the State relies, *Goodrick*, 102 Idaho at 812, 641 P.2d at 999, is inapposite. The defendant in *Goodrick* stood convicted of assault with intent to commit the infamous crime against nature, and he asserted that I.C. § 18–6605 may not be constitutionally applied to consenting adults of the opposite sex. The Idaho Supreme Court declared that Goodrick had no standing to challenge the statute's application to actions of consenting adults because it was clearly shown that he had used force and threats against his victim. Goodrick's position is readily distinguishable from that of Holden, for Goodrick's conviction was not for violation of I.C. § 18–6605, itself, but for *assault* with intent to commit the infamous crime against nature. Assault is by definition an act of attempted violence or threatened violence creating fear in the victim, I.C. § 18–901, and is not a crime subject to commission with the victim's "consent." Therefore, Goodrick's conviction, unlike that of Holden, inherently established nonconsensual conduct.

When a defendant's conviction is based upon a general jury verdict, and the record does not establish that the conviction was grounded upon a constitutionally supported theory, the conviction must be set aside.

> To say that a general verdict of guilty should be upheld though we cannot know it did not rest on the invalid constitutional ground ... would be to countenance a procedure which would cause a serious impairment of constitutional rights.

*Williams v. North Carolina*, 317 U.S. 287, 292, 63 S.Ct. 207, 210, 87 L.Ed. 279 (1942). *See also Street v. New York*, 394 U.S. 576, 585–87, 89 S.Ct. 1354, 1362–63, 22 L.Ed.2d 572 (1969); *Cotner v. Henry*, 394 F.2d 873,

875 n. 2 (7th Cir.1968), *cert. denied,* 393 U.S. 847, 89 S.Ct. 132, 21 L.Ed.2d 118 (1968); *State v. Pilcher,* 242 N.W.2d at 354–56. Therefore, on the record before us, which includes conflicting evidence as to whether force was used throughout the encounter between Holden and T.H., with no jury determination of that question, an issue is properly presented as to the constitutionality of a conviction that may have been predicated upon consensual acts.

For the foregoing reasons, we hold that Holden has standing to question the constitutionality of I.C. § 18–6605 as applied to private, consensual behavior of married couples.

B.  CONSTITUTIONALITY OF I.C. § 18–6605 AS APPLIED TO PRIVATE CONSENSUAL MARITAL RELATIONS.

■ Analysis of the constitutionality of any law regulating sexual conduct of married couples must begin with *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). The United States Supreme Court there determined that the State of Connecticut could not constitutionally prohibit the use of contraceptives by married persons. The Court held that there exists a constitutional right of privacy emanating from several specific guaranties in the Bill of Rights, which precludes state intrusion into the intimacies of marital life. Justice Douglas, writing for the majority, spoke reverently of the marriage relationship and disparagingly of any notion that government should be allowed to meddle in the most personal aspects of this relationship:

Would we allow the police to search the sacred precincts of marital bedrooms for telltale signs of the use of contraceptives? The very idea is repulsive to the notions of privacy surrounding the marriage relationship.

We deal with a right of privacy older than the Bill of Rights—older than our political parties, older than our school system. Marriage is a coming together for better or for worse, hopefully enduring and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects. Yet it is an association for as noble a purpose as any involved in our prior decisions.

*Griswold,* 381 U.S. at 485–86, 85 S.Ct. at 1682.

The constitutionally grounded privacy right was confirmed and extended to other contexts in subsequent decisions, including *Carey v. Population Services International,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) (use of contraceptives by minors); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (use of contraceptives by unmarried persons); and *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) (private possession of obscene matter in one's home); and it has been deemed a fundamental right. *Carey,* 431 U.S. at 685–86, 97 S.Ct. at 2016; *Stanley,* 394 U.S. at 564, 89 S.Ct. at 1247; *Griswold,* 381 U.S. at 491, 85 S.Ct. at 1685 (Goldberg, J. concurring). In both *Eisenstadt,* 405 U.S. at 453 n. 10, 92 S.Ct. at 1038 n. 10, and *Stanley,* 394 U.S. at 564, 89 S.Ct. at 1247, the Court reiterated an enunciation of this right penned by Justice Brandeis in 1928:

The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the Government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized man.

*Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting).

In addition to the foregoing cases, we have considered the United States Supreme Court's subsequent decision in *Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), holding that there exists no "fundamental right to engage in homosexual sodomy." *Id.* at 191, 106 S.Ct. at 2844. We do not, however, understand that deci-

sion to overrule or reject the privacy right of married couples announced in *Griswold*, though the Court declined to extend such right to private acts of homosexuals.[3] Indeed, the continuing vitality of *Griswold* is confirmed by the Court's more recent decision in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. ——, —— ——, 112 S.Ct. 2791, 2807–08, 120 L.Ed.2d 674, 699 (1992).

Although the scope of the right of privacy has not been fully defined by the United States Supreme Court, in light of the foregoing decisions there can be little doubt that it encompasses the most personal and intimate aspects of a marriage relationship. It is thus apparent that a constitutionally protected privacy interest is invaded when a statute like Section 18–6605 purports to prohibit particular sexual acts practiced consensually in private by married couples.

■ Where a statute infringes upon fundamental personal liberties, the act may be enforced only upon a showing of a subordinating state interest that is compelling. *Carey*, 431 U.S. at 686, 97 S.Ct. at 2016; *Griswold*, 381 U.S. at 497–98, 85 S.Ct. at 1688–89 (Goldberg, J., concurring); *Bates v. Little Rock*, 361 U.S. 516, 524, 80 S.Ct. 412, 417, 4 L.Ed.2d 480 (1960). In the case before us, the State has not attempted to identify a governmental interest, nor can we conceive of any, that would justify the intrusive invasion into marital privacy effectuated by application of I.C. § 18–6605 to the private, consensual behavior of marital partners. Accordingly, we can only conclude that Idaho's statute prohibiting the infamous crime against nature may not be constitutionally

enforced to prohibit private consensual marital conduct.[4]

Our conclusion is consistent with decisions from other jurisdictions which have held that similar statutes impermissibly abridge the constitutional right of privacy, *e.g., State v. Pilcher*, 242 N.W.2d 348 (Iowa 1976); *State v. Saunders*, 75 N.J. 200, 381 A.2d 333 (1977); *Post v. State*, 715 P.2d 1105 (Okla.Crim.App. 1986), or which have construed such statutes to be inapplicable to certain consensual conduct in order to avoid the constitutional issue. *Schochet v. State*, 320 Md. 714, 580 A.2d 176 (1990); *Commonwealth v. Balthazar*, 366 Mass. 298, 318 N.E.2d 478 (1974). *See also Cotner v. Henry*, 394 F.2d at 876 (there is a "substantial question" whether, in light of *Griswold*, state can prohibit sexual acts by married people with mutual consent).

■ Our holding is limited, however. We do not hold the statute invalid on its face and therefore unenforceable in all contexts. A statute that is overbroad in its scope and thereby abridges protected freedoms generally need not be stricken in its entirety. Rather, "the statute may forthwith be declared invalid to the extent that it reaches too far, but otherwise left intact." *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504, 105 S.Ct. 2794, 2802, 86 L.Ed.2d 394 (1985). The United States Supreme Court has explained that where a statute is challenged by one whose conduct is constitutionally protected from a statute's sweep, it is the "normal rule that partial, rather than facial invalidation is the required course." *Id. See also Broadrick v. Oklahoma*, 413 U.S. 601, 615–16, 93 S.Ct. 2908, 2917–18, 37 L.Ed.2d 830 (1973) (statute prohibiting political activity of state employees, though overbroad, was not

---

**3.** The majority in *Bowers v. Hardwick* specifically declined to express any opinion on the constitutionality of the challenged sodomy statute as applied to heterosexuals. *Id.*, 478 U.S. at 188 n. 2, 106 S.Ct. at 2842 n. 2.

**4.** We are mindful that whenever possible, a statute should be construed so as to avoid a conflict with the state or federal constitution. *Cowles Publishing Co. v. Magistrate Court of the First Judicial District of the State of Idaho, County of Kootenai*, 118 Idaho 753, 759–60, 800 P.2d 640, 646–47 (1990); *Idaho State AFL–CIO v. Leroy*, 110 Idaho 691, 698, 718 P.2d 1129, 1136 (1986); *Leonardson v. Moon*, 92 Idaho 796, 806, 451 P.2d 542, 552 (1969). Courts are not, however, em-

powered to change the plain meaning of unambiguous legislation or to insert into statutes qualifying terms or provisions that obviously are not there. *In re Dampier*, 46 Idaho 195, 207, 267 P. 452, 455 (1928); *Barnes v. Hinton*, 103 Idaho 619, 620, 651 P.2d 553, 554 (Ct.App.1982). Idaho Code § 18–6605 by its plain terms purports to apply to all persons and in all circumstances. There are no words in the statute that reasonably could be interpreted to exclude from its reach private consensual conduct of marital partners. We are, therefore, without any basis to construe the statute in a manner that would obviate the constitutional infirmity.

facially invalid and, "whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied"). Accordingly, we hold only that I.C. § 18–6605 may not be applied to private consensual acts of married couples. Our decision does not in any way affect the validity of I.C. § 18–6605 with respect to forced sexual activity, sexual acts with minors, nonprivate or commercial conduct, or bestiality.[5] We do not address the question of private acts of consenting adults who are not married to each other, as that issue is not before us.

Holden has also argued that I.C. § 18–6605 is void for vagueness. Our disposition of the right of privacy issue makes it unnecessary to address the vagueness argument.

Although Holden's convictions on two counts of the infamous crime against nature are invalid, our decision affords Holden no relief as to the period of incarceration which he must serve, for the sentences imposed on these convictions were equal to, and to be served concurrently with, his sentences for the other felonies for which he was convicted in this same case.

The judgment herein, insofar as it adjudges Holden guilty of two counts of the infamous crime against nature is reversed. The judgment is in all other respects affirmed.

WALTERS, C.J., and PERRY, J., concur.

---

**5.** We note that most nonconsensual conduct falling within the purview of I.C. § 18–6605 may also be prosecuted under more modern statutes that include oral and anal penetration within the definition of rape of a female, I.C. § 18–6101, or of a male, I.C. § 18–6108. Other statutes prohibit sexual molestation of minors. I.C. §§ 18–1506, 18–1508, and 18–1508A. In light of these more recent statutes, I.C. § 18–6605 appears to be superfluous except insofar as it proscribes bestiality and acts of competent, mutually consenting adults.