114 P.3d 150

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Kenneth CASSELMAN, Defendant–Respondent.**

No. 30611.

Court of Appeals of Idaho.

June 2, 2005.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Wiebe & Fouser, Canyon County Public Defender; Alexander B. Briggs, Deputy Public Defender, Caldwell, for respondent. Alexander B. Briggs argued.

PERRY, Chief Judge.

The state appeals from the district court's order dismissing one count of felony domestic battery against Kenneth Casselman. We reverse.

## I.

### FACTS

In July 2003, Casselman and his wife, Tabitha, were visiting with friends and family at the residence of Casselman's brother. Both Casselman and Tabitha were drinking alcohol. During the evening, Casselman made an offensive comment to a woman and Tabitha became upset. Tabitha gathered their children and attempted to leave. Casselman followed Tabitha and got into the driver's side of the vehicle. With Tabitha in the passenger side and the children in the back, Casselman drove away erratically. Casselman was angry and allegedly hit Tabitha in the mouth. Tabitha was scared and asked Casselman to stop the car. Casselman refused and backhanded Tabitha in her chest numerous times. Eventually, Tabitha told

Casselman she needed to use the restroom and Casselman stopped at a gas station. Tabitha went inside and asked the clerk to call for help. Police officers soon arrived, arrested Casselman, and took pictures of Tabitha's injuries.

Casselman was charged with one count of felony domestic battery. I.C. §§ 18–903(b), 18–918(5).[1] At a trial before a jury, Tabitha testified about the events leading up to Casselman's arrest. Additionally, two police officers testified. The first officer testified that he briefly spoke to Tabitha and then spoke to Casselman. The second officer testified that he took pictures of Tabitha because he saw swelling around her mouth and a slight trace of blood around the top and bottom of her lips. The officer testified that he used a digital camera to take the photographs and that, when he returned to the police station, he downloaded the photographs into his computer and e-mailed them to the crime lab. However, despite extensive efforts, the officer was unable to retrieve the photographs from his computer or the lab for use at trial.

Casselman moved to dismiss the domestic battery charge, arguing that the state had not disclosed the photographs and thus had violated its obligation to disclose material evidence pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The district court took the motion under advisement. The second officer was called back to the stand to testify, outside the presence of the jury, about the protocol used in handling photographic evidence. He testified that he followed the procedures used in his department.

In ruling on the motion to dismiss, the district court held that the state failed to demonstrate the police officer's good faith because the protocol used by the officers in handling digital photographs was inadequate to protect the evidence. The district court dismissed the charge against Casselman based upon the loss of the photographs. The state appeals.

## II.

## ANALYSIS

The state argues that the district court applied an incorrect legal standard to determine whether to dismiss the charge against Casselman. The state contends that application of the correct legal standard shows that there was no due process violation in the loss of the evidence.

■ In *Brady,* the United States Supreme Court held that due process requires the prosecution to disclose to the defense exculpatory evidence within its possession. A defendant's due process rights are violated where the prosecution fails to disclose exculpatory evidence that is material either to guilt or to punishment. *Id.* at 87, 83 S.Ct. at 1196, 10 L.Ed.2d at 218. Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985).

However, when determining whether a defendant's due process rights have been violated by the loss or destruction of allegedly exculpatory evidence, the Idaho Supreme Court adopted a three-prong balancing test which includes the following factors: (1) whether the evidence was material to the question of guilt or the degree of punishment; (2) whether the defendant was prejudiced by the loss or destruction of the evidence; and (3) whether the government was acting in good faith when it destroyed or lost the evidence. *See Paradis v. State,* 110 Idaho 534, 540–41, 716 P.2d 1306, 1312–13 (1986).

■ Later, the United States Supreme Court revisited the question of governmental loss or destruction of evidence, specifically with reference to evidence of unknown value. *See Arizona v. Youngblood,* 488 U.S. 51, 109

1. The state charged Casselman with felony domestic battery, I.C. § 18–918(5), based upon an enhancement that he had been convicted of misdemeanor domestic battery on two previous occasions. We note that, because Casselman was charged under Section 18–918(5) and not I.C. § 18–918(2)(a), the state was not required to demonstrate that the battery resulted in a traumatic injury.

S.Ct. 333, 102 L.Ed.2d 281 (1988). In *Youngblood*, the Supreme Court determined that, if the content of the lost evidence is unknown, and the item is therefore of only potentially exculpatory value, a due process violation will be established only if the defendant shows that the government acted in bad faith. *Id.* at 57–58, 109 S.Ct. at 337–338, 102 L.Ed.2d at 289–290. The Idaho appellate courts thereafter followed the *Youngblood* decision. *See Stuart v. State*, 127 Idaho 806, 815–16, 907 P.2d 783, 792–93 (1995); *State v. Ward*, 135 Idaho 68, 74, 14 P.3d 388, 394 (Ct.App.2000); *State v. Dopp*, 129 Idaho 597, 606–07, 930 P.2d 1039, 1048–49 (Ct.App. 1996); *State v. Bryant*, 127 Idaho 24, 28, 896 P.2d 350, 354 (Ct.App.1995); *State v. Holden*, 126 Idaho 755, 757, 890 P.2d 341, 343 (Ct. App.1995); *State v. Greathouse*, 119 Idaho 732, 735, 810 P.2d 266, 269 (Ct.App.1991). In *Stuart*, the Idaho Supreme Court explained that "for cases where the destroyed evidence is of unknown value, the Supreme Court's decision in *Youngblood* consolidates the three considerations which were enunciated in *Paradis* through its reasoning that materiality and prejudice to the defense can be presumed where the government acts in bad faith." *Stuart*, 127 Idaho at 816, 907 P.2d at 793.[2]

■ In the present case, the district court correctly determined that the content of the evidence was unknown and that the photographs were only potentially exculpatory. The district court referred to the content of the lost photographs stating, "I would have to think that this is controverted at this point because you have two officers, both of them looked at the same girl. One of them said I saw her injuries. The other one said I didn't see her injuries." The district court further referred to the photographs, commenting "we don't know if this is exculpatory, we don't know one way or the other, [and] there's a dispute on the evidence."

To determine whether the content of the lost evidence—the photographs—is unknown such that the photographs are of only potentially exculpatory value, we look to relevant case law. In *Dopp*, 129 Idaho 597, 930 P.2d 1039, an alleged victim testified at trial that when Dopp attacked her he tore her sweatshirt. The police destroyed the sweatshirt several years prior to trial as a matter of procedure. Dopp argued that the destruction of the sweatshirt violated his due process rights because he could have used it to impeach the victim's testimony. This Court determined that whether the victim's sweatshirt was torn was unknown and that, therefore, the destroyed evidence had only potentially exculpatory value. After making this determination, this Court went on to decide that the police had not acted in bad faith in destroying the sweatshirt and that such destruction was only negligence. Specifically this Court stated that "the evidence does not support a conclusion that law enforcement staff disposed of the sweatshirt in an effort to prevent Dopp from obtaining exculpatory evidence for use at trial." *Id.* at 607, 930 P.2d at 1049.

The present case differs from *Holden*, 126 Idaho 755, 890 P.2d 341, which also involved the loss of photographs. The photographs that had been seized by police officers were returned to the victim. This Court determined that, although the photographs were unavailable at trial, the nature of the evidence was not unknown because the content of the photographs was not controverted. Thus, in *Holden* the determination of whether the defendant's due process rights were violated turned upon the materiality of the lost evidence, and bad faith of the state did not need to be shown.

In the instant case, testimony regarding Tabitha's injuries was controverted. Tabitha testified that Casselman hit her in the mouth, causing her mouth to split and bleed. One officer conceded on cross-examination that he

whether the defendant's due process rights had been violated. In *Porter*, the Idaho Supreme Court relied on *Paradis* but did not indicate an intent to overrule *Stuart* or to disagree with the *Youngblood* decision. Therefore, we apply the *Youngblood* standard as set forth in *Stuart* to the facts of this case.

did not see any of Tabitha's injuries. However, a second officer testified that he observed swelling around Tabitha's mouth and also saw a slight trace of blood on the top and bottom of her lips. That same officer took the photographs of Tabitha. Unlike the facts in *Holden*, here the content of the photographs was controverted based upon conflicting testimony. Thus, the content of the evidence is unknown and the photographs are only potentially exculpatory. Therefore, to establish a due process violation, Casselman must show that the government acted in bad faith. *See Youngblood*, 488 U.S. at 57–58, 109 S.Ct. at 337–338, 102 L.Ed.2d at 289–290.

■ The district court did not correctly apply this bad-faith standard. After having found the content of the photographs to be of an unknown value, the district court asked the state to provide argument on the issue of "the government's procedures being made and carried out in good faith." After the prosecutor provided some argument that the officers had not acted in bad faith, the district court interrupted stating:

> I'm not sure we're talking about bad faith. I don't think that there is any evidence that I can find that there is bad faith other than the fact that they're lost. That's not the test. The test is can you show that there's good faith, and even in spite of the good faith, they're lost.

In reaching its decision whether the police acted in good faith, the district court focused on the sufficiency of the protocol to preserve photographs taken from a digital camera as evidence. The state argues that, rather than considering the good faith of the police officers, the district court should have considered whether the police acted in bad faith. We agree.

■ During the trial, the district court found that there was no evidence of bad faith other than the fact that the photographs were lost. On appeal, Casselman has not demonstrated that the police intentionally destroyed or lost the photographs in an attempt to prevent Casselman from obtaining exculpatory evidence for use at trial. The second officer explained that he followed departmental procedure in handling the digital photographs. Although we cannot say that the procedures the officer followed are the most efficient and reliable method for preserving such evidence for trial, we also cannot conclude that the officer acted more than negligently. Negligence resulting in the loss of evidence does not rise to the level of bad faith. *See Youngblood*, 488 U.S. at 58, 109 S.Ct. at 337, 102 L.Ed.2d at 289; *Dopp*, 129 Idaho at 606–07, 930 P.2d at 1048–49. The evidence is insufficient to support a finding that the officer acted in bad faith in the loss of the photographs and, thus, Casselman has not shown that his due process rights were violated. Therefore, we reverse the district court's order dismissing the charge of felony domestic battery.

### III.

### CONCLUSION

The evidence does not prove that the state acted in bad faith when photographs of unknown evidentiary value were lost. Therefore, Casselman's due process rights were not violated by the loss of the photographs. Accordingly, the district court's order of dismissal is reversed.

Judge LANSING and Judge Pro Tem SCHWARTZMAN **concur.**