930 P.2d 1039

**STATE of Idaho, Plaintiff–Respondent– Cross Appellant,**

v.

**Sidney David DOPP, Defendant– Appellant–Cross Respondent.**

**No. 21863.**

Court of Appeals of Idaho.

Dec. 4, 1996.

Petition for Review Denied Feb. 10, 1997.

Grover & Archibald, Rigby, for defendant–appellant–cross respondent. R. James Archibald, argued.

Alan G. Lance, Attorney General; Catherine O. Derden, Deputy Attorney General, argued, Boise, for plaintiff–respondent–cross appellant.

LANSING, Judge.

After a jury trial, Sidney David Dopp was convicted of battery with intent to commit rape and was sentenced to a fixed term of ten years' incarceration. Dopp now appeals the conviction, alleging that there were a number of errors during the course of his trial that require reversal of the judgment. Dopp also asserts that he received ineffective assistance of counsel. He challenges, as well, the sentence imposed by the trial court. We affirm.

## I. FACTS

On April 21, 1989, Dopp, while wearing only a shirt, attacked twenty-two-year old Tami Zervas as she was walking down the sidewalk on the street near her home. He struck her, knocked her down, pulled on her clothing and attempted to drag her into a nearby residence. When Ms. Zervas's husband came running to her aid, Dopp fled to another home, the residence of Mr. and Mrs. Baird. When Mrs. Baird answered Dopp's knock, he forced his way into her house. A struggle ensued between Dopp and Mr. Baird. In the course of the fight, Mr. Baird struck Dopp at or near the base of the skull with the butt of a shotgun. The Bairds were able to escape to the home of a neighbor where they called the police.

As a consequence of his attack on Ms. Zervas, Dopp was charged with battery with intent to commit rape, I.C. § 18–903, –911. In three other cases he was charged with other crimes, including aggravated battery stemming from his attack on the Bairds. Dopp entered into a plea agreement with the State in which he pleaded guilty to charges brought in all four criminal cases. Subsequently, the district court denied a motion by Dopp to withdraw the guilty pleas in the four cases, and this Court affirmed that denial on appeal. *State v. Dopp*, 124 Idaho 512, 861 P.2d 82 (Ct.App.1992). The Idaho Supreme Court, however, reversed the denial of Dopp's motion to withdraw his guilty pleas in two of the cases, including the present case stemming from his attack on Ms. Zervas. *State v. Dopp*, 124 Idaho 481, 861 P.2d 51 (1993). On remand Dopp proceeded to trial on the charge of battering Ms. Zervas with intent to commit rape, was found guilty by the jury and was sentenced to a ten-year determinate term of imprisonment.

## II. ISSUES

On appeal, Dopp raises numerous issues which we have consolidated as follows. Dopp

argues that the trial court erred by (1) admitting at trial evidence of other offenses (the Baird incident) committed by Dopp on the night of the battery; (2) failing to rule prior to trial on Dopp's motion in limine to exclude this evidence; (3) failing to give a limiting instruction to the jury about the purpose of the evidence contemporaneously with the admission of testimony regarding the Baird incident; (4) failing to declare a mistrial or to grant a new trial based upon the foregoing alleged errors; and (5) failing to grant a new trial on grounds that new material evidence had been discovered and exculpatory evidence had been destroyed by the State. Dopp also contends the he was denied effective assistance of counsel at trial and at sentencing and that the sentence imposed was excessive.

## III. ANALYSIS

### A. Issues Regarding the Baird Incident.

With respect to testimony concerning the happenings at the Baird residence following Dopp's attack on Ms. Zervas, Dopp asserts that: (1) the admission of this evidence violated I.R.E. 404(b); (2) the trial court's failure to rule on Dopp's motion in limine to exclude this testimony prior to trial was grounds for a mistrial; and (3) the trial court's failure to give a cautionary instruction regarding this testimony contemporaneously with its admission was error and created grounds for a new trial.

#### 1. The trial court did not err in admitting evidence of the occurrence at the Baird residence.

 Dopp contends that because the events that occurred at the Baird residence involved misconduct other than that for which he was being tried, admission of the evidence violated Idaho Rule of Evidence 404(b).[1] Under that rule, evidence of other crimes or wrongs is inadmissible for the purpose of showing a person's character or propensity to commit crimes. *State v. Vierra,*

125 Idaho 465, 471, 872 P.2d 728, 734 (Ct. App.1994); *State v. Guinn,* 114 Idaho 30, 34, 752 P.2d 632, 636 (Ct.App.1988). However, evidence of such acts may be admissible if relevant for other purposes. I.R.E. 404(b); *State v. Atkinson,* 124 Idaho 816, 818, 864 P.2d 654, 656 (Ct.App.1993), *cert. denied,* 511 U.S. 1076, 114 S.Ct. 1659, 128 L.Ed.2d 376 (1994). In responding to an objection to such evidence, the trial court must engage in a two-step analysis. The court must first determine whether the evidence is relevant to a material and disputed issue concerning the crime charged, other than propensity. *State v. Moore,* 120 Idaho 743, 745, 819 P.2d 1143, 1145 (1991); *Atkinson, supra.* Whether evidence is relevant is an issue of law, and we therefore exercise free review of the trial court's relevancy determination under I.R.E. 404(b). *State v. Tapia,* 127 Idaho 249, 254, 899 P.2d 959, 964 (1995); *State v. Raudebaugh,* 124 Idaho 758, 864 P.2d 596 (1993); *Atkinson,* 124 Idaho at 818–19, 864 P.2d at 656–57. If the evidence is deemed relevant, the court must then determine whether its probative value substantially outweighs the danger of unfair prejudice to the defendant. I.R.E. 403; *Moore,* 120 Idaho at 745, 819 P.2d at 1145; *Atkinson, supra.* We use an abuse of discretion standard when reviewing this determination. *Tapia, supra; Atkinson, supra.*

 The parties' arguments regarding the relevance of the Baird incident focused upon the specific intent element of battery with intent to commit rape, the crime with which Dopp was charged. Dopp's counsel acknowledged that the defense was pursuing a theory that Dopp was incapable of forming a specific intent to rape Ms. Zervas because he was at the time heavily intoxicated from the use of alcohol and cocaine. In his opening statement to the jury, defense counsel had alluded to anticipated testimony that Dopp was found by officers sitting on the curb in an alcohol and drug-induced stupor. In order to counter Dopp's theory, the State

---

1. I.R.E. 404(b) provides:
 Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity

therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

sought to present evidence of the events at the Baird residence to show that Dopp was not then dazed and that his subsequent dazed demeanor resulted not from his drug and alcohol use but from having been struck at the base of his skull with the butt of Mr. Baird's gun. The trial court held that evidence of Dopp's behavior and appearance just minutes after the attack on Ms. Zervas was relevant to the issue of Dopp's ability to form an intent on that occasion. The court also concluded that the probative value of the evidence was not outweighed by its prejudicial impact.

We agree with the district court's determination that the evidence was relevant. In order to prove Dopp's guilt of the charged offense, the State bore the burden to show that he harbored the specific intent to rape the victim. Evidence bearing upon his capacity to form such a specific intent was therefore relevant to a material issue, particularly in light of Dopp's intoxication-based defense. We also discern no abuse of discretion in the trial court's determination that the prejudicial effect of this evidence did not outweigh its probative value. Accordingly, we affirm the trial court's denial of Dopp's motion in limine to exclude this evidence, and we uphold the court's decisions overruling Dopp's objections to the evidence at trial.

### 2. The court's delay in ruling upon Dopp's motion in limine was not grounds for mistrial or a new trial.

■ Dopp's motion in limine to exclude testimony concerning the Baird incident was filed before trial and was discussed at a pre-trial conference, but a decision on the motion was deferred because Dopp was not personally present. Apparently, the court instructed the parties to refrain from discussing this incident in either jury voir dire or opening statement until such time as a ruling was made. In a subsequent pre-trial conference, the court was not asked to render a decision on the motion in limine. No ruling was made until the challenged evidence was offered during the trial.

After the trial court's decision to admit the evidence, Dopp made two motions for a mistrial pursuant to I.C.R. 29.1 on the ground

that he was prejudiced by the timing of the court's ruling on the motion in limine. According to Dopp's argument, his defense was impaired by the late ruling because he was not allowed to voir dire the jury about the Baird incident or mention it in his opening statement and was therefore unable to prepare the jury for this testimony. Dopp later made a motion for a new trial pursuant to I.C.R. 34, which was based in part upon the same argument. All of these motions were denied.

The standards governing appellate review of the orders on motions for mistrial and motions for a new trial are well known. Decisions on both of these types of motions rest within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Atkinson,* 124 Idaho at 818, 864 P.2d at 656 (motion for mistrial); *State v. Gomez,* 126 Idaho 83, 878 P.2d 782 (1994), *cert. denied,* 513 U.S. 1005, 115 S.Ct. 522, 130 L.Ed.2d 427 (1994) (motion for new trial); *State v. Lankford,* 116 Idaho 860, 781 P.2d 197 (1989), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990) (motion for new trial). A mistrial may be declared, upon the defendant's motion, if there has been an error or legal defect during the trial which is prejudicial to the defendant and deprives the defendant of a fair trial. I.C.R. 29.1. Grounds for a new trial include circumstances where the court "has erred in the decision of any question of law arising during the course of the trial." I.C. § 19–2406(1). Thus, each of the subject motions turns upon the question whether the district court committed error when it reserved until the middle of the trial a ruling on Dopp's motion in limine. We do not find such error.

■ It is within the discretion of the trial court to rule on a motion in limine prior to trial or to withhold a decision on the motion until the evidence is offered at trial.

Because a motion in limine is based on an alleged or anticipated factual scenario, without the benefit of all the other actual evidence which will be admitted at trial, the trial judge will not always be able to make an informed decision regarding the admissibility of the evidence prior to the time the evidence is actually presented at

trial. It is often difficult, and sometimes impossible, for the trial judge to make a proper ruling without the benefit of all the other evidence admitted at trial.... The trial judge, in the exercise of his discretion, may decide that it is inappropriate to rule in advance on the admissibility of evidence based on a motion in limine, but may defer his ruling until the case unfolds and there is a better record upon which to make his decision.

*State v. Hester,* 114 Idaho 688, 699–700, 760 P.2d 27, 38–39 (1988). *See also State v. Stuart,* 110 Idaho 163, 715 P.2d 833 (1986), *overruled on other grounds, State v. Tribe,* 123 Idaho 721, 725 n. 4, 852 P.2d 87, 91 n. 4 (1993).

In denying Dopp's motion for a mistrial, the district court explained that it had delayed acting on Dopp's motion in limine until the factual backdrop against which the Baird testimony could be evaluated became clear. The court concluded that the timing of the ruling did not by itself create undue prejudice to Dopp. The trial court's decision finds support in the record. The relevance of the testimony regarding the activity at the Baird residence did not become apparent until Dopp's defense strategy was revealed. We perceive no prejudice to Dopp merely because defense counsel was unable to discuss this evidence with the jury during voir dire or opening statement. Dopp does not contend that this limitation resulted in selection of jurors who were biased or unable to perform their role appropriately. Therefore, we affirm the district court's denial of Dopp's motions for a mistrial and for a new trial insofar as they were based upon the claim that there was prejudicial error in the timing of the court's decision on the motion in limine.

**3. The timing of the limiting instruction to the jury was not an abuse of discretion.**

■ The motions for a mistrial and for a new trial also asserted error in the timing of a limiting instruction given to the jury con-

cerning the purpose for which the jury could consider the evidence of the Baird incident. When the State introduced testimony regarding the events at the Baird residence, Dopp's counsel requested that a limiting instruction be given contemporaneously with the testimony. The trial court denied Dopp's request, holding that such an instruction should be given with the remaining instructions at the conclusion of the trial. An appropriate cautionary instruction was included in the court's final charge to the jury.

■ When one party introduces evidence for a limited purpose, by terms of I.R.E. 105 the opponent, upon request, is entitled to an instruction restricting the jury's use of the evidence to the purpose for which it was admitted.[2] The rule does not, however, specify when the instruction must be given. That determination lies within the trial court's discretion. In our view, the more effective practice generally is to give the instruction when the evidence is admitted. As one treatise states:

> It is preferable that the jury be instructed on the limited use of the evidence at the point of admission. The instruction can be directed specifically at the evidence in question and can take effect before the jury has been accustomed to thinking of it in terms of the inadmissible purpose.

21 Charles A. Wright & Kenneth W. Graham, Jr., FEDERAL RULES OF EVIDENCE § 5066, at 332 (1977). Nonetheless, we perceive no abuse of discretion in the court's refusal to give a contemporaneous instruction. The instruction that was given at the conclusion of the trial apprised the jury of the sole purpose for which evidence of the Baird incident could be considered. The court's decision regarding the timing of the instruction did not create grounds for either a mistrial or a new trial.

**B. Dopp Was Not Entitled to a New Trial on the Basis of the State's Belated Production of the Medical Screening Form.**

■ As another basis for his motion for a new trial Dopp alleged that he had newly

---

**2.** I.R.E. 105 provides: "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

discovered evidence, a medical screening form completed upon his booking into the Bonneville County Jail. At the hearing on this motion he also argued that his right to due process had been violated by the State's failure to produce this form, as Dopp had requested, before trial. We address each argument in turn.

Idaho Code Section 19–2406(7) [3] permits the trial court to grant a new trial where material evidence is discovered after conviction. Dopp characterizes the medical screening form that was prepared by an intake officer when Dopp was booked into the Bonneville County Jail as newly discovered material evidence. The form was requested by Dopp in discovery but was not located and produced by the prosecutor until after the trial. It indicated that at the time of booking, Dopp was intoxicated. Dopp argues that this evidence was exculpatory because it would have supported his defense theory that extreme intoxication prevented his forming a specific intent to commit rape and would have impeached the State's witnesses who testified that Dopp had been lucid on the night of the attack.

■ To demonstrate a right to a new trial based upon the discovery of new evidence the movant must show that: (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the evidence is material, not merely cumulative or impeaching; (3) the evidence will probably produce an acquittal; and (4) the failure to learn of the evidence was due to no lack of diligence on the part of the defendant. *State v. Drapeau*, 97 Idaho 685, 691, 551 P.2d 972, 978 (1976); *State v. Pugsley*, 119 Idaho 62, 803 P.2d 563 (Ct.App.1991).

It must be acknowledged that, although the defendant was aware of the existence of the form, the unavailability of the document for use at the trial was not attributable to any lack of diligence by Dopp or his counsel. Therefore, the fourth factor in the *Drapeau* test may be satisfied here. The three remaining components of the *Drapeau* test are not satisfied, however. Long before his trial, Dopp knew that the form had been completed and knew the contents of the form, which indicated that Dopp was intoxicated or on drugs when he was admitted into jail. A jailer who could have testified to Dopp's apparent state of intoxication upon his entry into the jail, and whose testimony would have supported Dopp's theory of the case, was available but was not called to testify.[4] Therefore, although the *document* was not available, equivalent *evidence* was known by and accessible to Dopp. In addition the medical screening form would have been merely cumulative of other evidence presented at trial. This evidence included another jail admission form indicating that Dopp was intoxicated, Dopp's testimony and the testimony of two police officers who acknowledged that Dopp was intoxicated at the time of his arrest. Because the medical screening form would only have been cumulative of substantial other evidence, it is improbable that introduction of the form would have changed the outcome of the trial. Accordingly, the district court properly rejected Dopp's claim that he was entitled to a new trial based upon newly discovered evidence.

■ We turn then to Dopp's assertion that the State's failure to produce the form before trial was a due process violation under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 13 of the Idaho Constitution. The Due Process guarantees of the federal and state constitutions mandate that the prosecution disclose to the accused exculpatory evidence in the government's possession. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963);

---

**3.** I.C. § 19–2406 provides in part:

When a verdict has been rendered against the defendant the court may, upon his application, grant a new trial in the following cases only:

. . . .

(7) When new evidence is discovered material to the defendant, and which he could not with reasonable diligence have discovered and produced at the trial.

**4.** Apparently, trial counsel subpoenaed two jailers who had observed Dopp's demeanor at the jail but decided not to use their testimony. One jailer would have testified that Dopp appeared intoxicated while the other would have testified that Dopp appeared sober and lucid.

*Paradis v. State,* 110 Idaho 534, 716 P.2d 1306 (1986); *State v. Bruno,* 119 Idaho 199, 804 P.2d 928 (Ct.App.1990). When the prosecutor omits to disclose exculpatory evidence that is material either to guilt or punishment, a due process violation occurs. *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984); *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–97; *Paradis,* 110 Idaho at 540, 716 P.2d at 1312; *Bruno,* 119 Idaho at 202, 804 P.2d at 931. Evidence is material for purposes of due process analysis if there is a reasonable probability that, had the evidence been available to the defense, the result of the proceeding would have been different. *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985); *State v. Holden,* 126 Idaho 755, 757, 890 P.2d 341, 343 (Ct.App.1995). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383. Whether this standard of materiality is met is a question of law upon which we exercise free review. *Bruno,* 119 Idaho at 201–02, 804 P.2d at 930–31.

As we have already discussed, Dopp was able to introduce evidence, including testimony of police officers, that he was intoxicated on the night in question, and he had at his disposal further such evidence that he elected not to use. Dopp has shown no reason to believe that introduction of the medical screening form would have changed the jury's verdict. Therefore the undisclosed evidence does not meet the constitutional standard of materiality, and the State's failure to provide this evidence did not deprive Dopp of due process.

## C. The State's Destruction of the Victim's Sweatshirt was not a Due Process Violation.

██ Dopp also argues that his due process rights were violated by the destruction of the victim's sweatshirt, an evidentiary item that he claims would have been exculpatory. At trial, Ms. Zervas testified that Dopp had torn the sweatshirt she was wearing. Dopp then wanted to impeach this testimony by introducing into evidence the sweatshirt, which he alleged was not torn. Personnel of the Bonneville County Sheriff's Office, however, had destroyed the sweatshirt several years before the trial. Dopp avers that he was unduly prejudiced by the loss of this evidence because, had he been able to present an intact sweatshirt, the jury would not have found that he harbored the intent to commit rape and would have found him guilty only of simple battery.

The destruction of this evidence by law enforcement personnel was an outgrowth of the unusual procedural history of this case. As noted above, the crime for which Dopp was on trial occurred in 1989. In 1991, Dopp entered a guilty plea but later moved to withdraw it. The order denying that motion prompted an appeal by Dopp and a reversal by the Idaho Supreme Court. As a consequence of the appeal and proceedings on remand, the case was not tried until 1994, some five years after the offense. According to information presented by the prosecutor, sheriff's office personnel disposed of the victim's sweatshirt soon after Dopp's guilty plea based on the assumption that the evidence was no longer needed.

██ The government's duty to disclose material exculpatory evidence to the defendant in a criminal case includes the duty to use earnest efforts to preserve evidence for possible use by the defense. *State v. Fain,* 116 Idaho 82, 91, 774 P.2d 252, 261 (1989), *cert. denied,* 493 U.S. 917, 110 S.Ct. 277, 107 L.Ed.2d 258 (1989); *State v. Bryant,* 127 Idaho 24, 28, 896 P.2d 350, 354 (Ct.App. 1995). This constitutional obligation to preserve evidence is limited, however, to evidence that possesses an exculpatory value that was apparent before the evidence was destroyed and is of such a nature that the defendant would be unable to obtain comparable evidence by any other reasonably available means. *Trombetta,* 467 U.S. at 488, 489, 104 S.Ct. at 2533, 2534. If the content of the lost evidence is unknown, and the item is therefore of only *potentially* exculpatory value, a due process violation will be established only if the defendant shows that the government acted in bad faith. *Arizona v. Youngblood,* 488 U.S. 51, 57–58, 109 S.Ct. 333, 337–38, 102 L.Ed.2d 281 (1988); *Stuart v. State,* 127 Idaho 806, 815–16, 907 P.2d 783, 792–93 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1877, 135 L.Ed.2d 173 (1996); *Bryant,* 127

Idaho at 28, 896 P.2d at 354. The reason for this bad faith inquiry was explained by the United States Supreme Court in *Youngblood:*

[R]equiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.,* those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.

*Youngblood,* 488 U.S. at 58, 109 S.Ct. at 337.

In this case it is unknown whether the victim's sweatshirt was untorn and thereby possessed the exculpatory value that Dopp attributes to it. Consequently, its destruction does not establish a due process violation absent a showing that the government acted in bad faith. No demonstration of bad faith has been made here. Those who destroyed the shirt acted negligently, for they failed to take into account the possibility of a successful appeal or action for post-conviction relief. However, the evidence does not support a conclusion that law enforcement staff disposed of the sweatshirt in an effort to prevent Dopp from obtaining exculpatory evidence for use at trial. Indeed, the timing of the act, subsequent to Dopp's guilty plea, counters any implication of such an intent. Moreover, it is far from clear that the shirt, even if undamaged, would or should have been recognized by law enforcement personnel as evidence having exculpatory value; those individuals could not have anticipated that, years later, the shirt would be useful to impeach the victim who would testify that it had been torn. We therefore agree with the district court's conclusion that no violation of Dopp's due process rights has been demonstrated.

**D. The Court's Ruling that Restricted Dopp's Presentation of Evidence that the Victim's Sweatshirt Had Been Destroyed Was Harmless Error.**

■ Dopp's motion for a new trial also averred that the trial court erred when it prevented Dopp from questioning the State's witnesses about the unavailability of the victim's sweatshirt.

■ In response to a motion by the State, the district court ruled that if Dopp made reference to the fact that the victim's sweatshirt was missing, the State would be permitted to explain fully why the sweatshirt had been destroyed, which explanation would disclose that Dopp had previously pleaded guilty. As a consequence of this ruling, Dopp elected not to allude to the unavailability of the shirt. Dopp contends that the trial court's ruling violated Idaho Rule of Evidence 410, which precludes the admission against a defendant of evidence of a guilty plea that was later withdrawn.[5] The State concedes that the admission of evidence of Dopp's guilty plea would have been prohibited by I.R.E. 410. The State contends, however, that even if the court's ruling was improper, it constituted harmless error because no evidence of the withdrawn plea was actually introduced at trial.

■ An error in an evidentiary ruling in a criminal trial will be deemed harmless if the appellate court is convinced beyond a reasonable doubt that the jury would have reached the same result absent the error. *State v. LePage,* 102 Idaho 387, 393–96, 630 P.2d 674, 680–83 (1981), *cert. denied,* 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981); *State v. Boman,* 123 Idaho 947, 950–51, 854 P.2d 290, 293–94 (Ct.App.1993); *State v. Simonson,* 112 Idaho 451, 732 P.2d 689 (Ct.App.1987).

Here, Dopp was entitled to draw to the jury's attention any weaknesses in the State's evidence, including the absence of the sweatshirt which could have substantiated or contradicted the victim's testimony that Dopp tore her clothing. The district court's decision making any inquiry into this area by Dopp subject to the penalty of disclosure of

---

**5.** I.R.E. 410 provides in relevant part: "Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant

who made the plea or was a participant in the plea discussions: (1) a plea of guilty which was later withdrawn; ..."

his prior guilty plea violated I.R.E. 410.[6] However, the ruling was of little consequence in this case. It had only the effect of restraining Dopp from cross-examining the State's witnesses respecting the sweatshirt's absence. Had he been allowed to engage in this cross-examination, the jury would have heard merely that the sweatshirt had not been preserved. At best, it would have left the jury with the knowledge that one item of evidence, which might or might not have impeached the victim's testimony that her shirt was torn, had been destroyed by the State. Even if, based upon this testimony, the jury would have assumed that the sweatshirt was not torn, the evidence would have had little probative value on the central question of whether Dopp possessed the intent to rape when he attacked Ms. Zervas. It is this Court's judgment beyond a reasonable doubt, that if Dopp had been allowed to question the State's witnesses about the missing sweatshirt, the jury's verdict would have been the same.

### E. The Court Properly Overruled Dopp's Objections to the Prosecutor's Questions Regarding the Victim's Knowledge of Dopp's Intent.

■ Prior to trial, at Dopp's request, the trial court issued the following order: "Tami Zervas shall not testify as to what she thought the intent or desire of Sidney D. Dopp was, but may only testify as to his and/or her actions and/or statements." However, at trial the following exchange took place during redirect examination of Ms. Zervas:

Q: Ms. Zervas, you were asked if Sid Dopp attempted to kiss you. Do you know what he was attempting to do?

A: I think I know what he was attempting to do, yes.

Q: But do you know whether or not he was trying to kiss you?

A: No. I was moving the entire time.

Q: You were asked whether he hugged you or attempted to hug you. Do you

know what was in his mind relative to whether he wanted to hug you or attempt to hug you?

At this point Dopp's counsel objected to the State's inquiry into Ms. Zervas' opinion about Dopp's state of mind, but the objection was overruled and the inquiry continued as follows:

Q: I mean, do you know whether he was attempting to hug you or not?

A: No.

Dopp contends that the Court erred in overruling his objection.

■ It is self-evident that the victim could not know Dopp's thoughts and that any opinion she might offer in that regard would amount to speculation. Therefore, admission of such an opinion would have been improper. However, the victim here was not asked what she believed Dopp's intent to be. She was asked only whether she knew Dopp's intent, a question requiring a yes or no answer. Evidently, these questions were asked during redirect examination because Dopp's counsel, in cross-examining the victim, had asked if Dopp attempted to kiss or hug her. Ms. Zervas responded that he had not made such an attempt. It appears that the prosecutor then asked Ms. Zervas the questions set forth above in order to establish that, even though Dopp had not hugged or kissed her, she could not rule out such an intent. The questions did not elicit Ms. Zervas's opinion of Dopp's intent, and no such opinion testimony reached the jury. Therefore, the questions were not improper and did not violate the trial court's order on Dopp's motion in limine.

### F. Dopp Has Not Established Ineffective Assistance of Counsel.

Dopp, who has been represented by different attorneys at trial, at sentencing, and on appeal, asserts that both his trial attorney and his attorney at sentencing were ineffective.

---

6. The court could have precluded Dopp's attorney from attributing bad faith to the State by restricting the defense to showing only that the sweatshirt had not been preserved and by order-

ing that the attorney not imply any intentional misconduct on the part of the sheriff's personnel during his examination of witnesses or in his argument to the jury.

609

To prevail on a claim of ineffective assistance of counsel, a claimant must show both that the attorney's performance in the criminal proceedings was deficient and that the deficiency in performance was prejudicial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *State v. Roles,* 122 Idaho 138, 144, 832 P.2d ·311, 317 (Ct.App.1992). In order to show that counsel's performance was deficient, the claimant must demonstrate that the attorney's conduct fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. at 2064–65; *Aragon v. State,* 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). The prejudice element of the *Strickland* standard requires that the claimant establish that there is a reasonable probability that, absent counsel's errors, the outcome of the trial would have been different. *Aragon,* 114 Idaho at 761, 760 P.2d at 1177.

■ The Idaho appellate courts have often cautioned that it is usually inappropriate to raise a claim of ineffective assistance of counsel on a direct appeal from the judgment of conviction because such claims frequently raise issues upon which no evidence was adduced at the criminal trial. *See, e.g., Carter v. State,* 108 Idaho 788, 792, 702 P.2d 826, 830 (1985); *State v. Machen,* 100 Idaho 167, 171, 595 P.2d 316, 320 (1979); *State v. Mitchell,* 124 Idaho 374, 375–76, 859 P.2d 972, 973–74 (Ct.App.1993); *State v. Rendon,* 107 Idaho 425, 426, 690 P.2d 360, 361 (Ct. App.1984). Ineffective assistance claims are more appropriately presented through a post-conviction relief action where an evidentiary record regarding the attorney's actions, and reasons underlying those actions, can be developed. *Carter, supra; Mitchell, supra; State v. Munoz,* 118 Idaho 742, 745, 800 P.2d 138, 141 (Ct.App.1990). Because of the deficiencies of the bare trial record to illuminate claims of ineffective assistance of counsel, and in order to avoid a decision adverse to the appellant which would become *res judicata* on the claims, this Court has on occasion declined to consider such claims on direct appeal, leaving the appellant with an opportunity to pursue a subsequent application for post-conviction relief. *Mitchell, supra; State v. Marks,* 119 Idaho 64, 66, 803 P.2d 565, 567 (Ct.App.1991); *State v. Steele,* 118 Idaho 793,

795, 800 P.2d 680, 682 (Ct.App.1990). On the other hand, where the alleged deficiencies relate to the attorney's actions during trial, such as the failure to object to particular evidence or jury instructions, the trial record alone may be sufficient to assess the attorney's performance. Therefore, review of such claims has been conducted in the direct appeal. *See, e.g., Roles,* 122 Idaho at 144–49, 832 P.2d at 317–22.

■ Here, Dopp asserts the following errors by counsel: (1) trial counsel's waiver of Dopp's right to a twelve-person jury; (2) trial counsel's failure to properly argue against the court's ruling that the State would be allowed to introduce evidence of Dopp's earlier guilty plea; and (3) failure of counsel to call family members and counselors from the Idaho State Penitentiary to present mitigating evidence at the sentencing hearing. Because the trial record is sufficient to allow our review of the first two complaints, we will address Dopp's allegations of deficient legal representation. However, as to the claim regarding counsel's failure to call witnesses at sentencing, the record is devoid of any evidence regarding Dopp's contentions that such witnesses were available or could have given testimony that would have been helpful to Dopp. If we were to reach the merits of this third claim, a decision adverse to Dopp, which would become *res judicata,* would be required due to the absence of any support in the record. We therefore decline to address the third claim.

■ As to the waiver of a twelve-person jury, the record reveals that before the presentation of any evidence, one of the jurors called in sick, and no alternate had been selected. Defense counsel stated that he had discussed the situation with Dopp and that Dopp was willing to proceed with eleven jurors. The district court then engaged in a colloquy with Dopp in which Dopp's alternatives were explained. Dopp told the court that he wanted to proceed with eleven jurors. Because the record clearly indicates that Dopp was fully apprised of alternatives available to him with respect to the number of jurors and personally made the decision to

proceed with eleven jurors sitting, his assertion that his attorney was deficient in this situation is without merit.

Dopp next asserts that his trial counsel was ineffective in failing to properly oppose the prosecutor's motion that the State be allowed to introduce evidence of Dopp's withdrawn guilty plea if Dopp were to raise questions about the unavailability of the victim's sweatshirt. Dopp's attorney objected to the State's motion, arguing that the unfair prejudicial impact of disclosing Dopp's guilty plea to the jury would outweigh the probative value of the testimony. It is apparent that counsel's argument was predicated upon I.R.E. 403.[7] The attorney did not, however, mention I.R.E. 410, which prohibits use of evidence of a withdrawn guilty plea against a defendant. Dopp argues that if his attorney had cited this controlling rule, the judge would have denied the State's motion and would have permitted Dopp to inquire about the missing sweatshirt without imposing as a quid pro quo the disclosure of the withdrawn guilty plea. We will assume that Dopp's attorney was deficient in failing to bring Rule 410 to the court's attention and that, if the attorney had done so, the court's ruling would have been different. Nonetheless, this claim of ineffective assistance of counsel does not satisfy the second prong of the *Strickland v. Washington* test—that absent counsel's error, the outcome of the trial would have been different. We have already held that the court's ruling on the State's motion was erroneous but that the error was harmless. It follows that counsel's failure to prevent the erroneous ruling was not prejudicial in that it did not effect the outcome of the trial.

### G. The Trial Court Did Not Abuse its Discretion at the Sentencing Hearing.

Finally, we address Dopp's assertion that the district court abused its discretion at sentencing by not granting a continuance at Dopp's request, by allowing the State to discuss pending charges against Dopp, and by imposing a fixed ten-year sentence.

■ A motion for continuance is addressed to the sound discretion of the trial court, and the action of the court will be upheld unless there is a clear abuse of discretion. *State v. Matteson,* 123 Idaho 622, 627, 851 P.2d 336, 341 (1993); *State v. Laws,* 94 Idaho 200, 202, 485 P.2d 144, 146 (1971); *State v. Cagle,* 126 Idaho 794, 797, 891 P.2d 1054, 1057 (Ct.App.1995). Generally, the denial of a request for a continuance is not an abuse of discretion absent a showing that the defendant's substantial rights have been prejudiced. *Laws,* 94 Idaho at 202–03, 485 P.2d at 146–47.

■ On the day of sentencing, counsel for Dopp requested a continuance on the ground that he and Dopp had had insufficient time to review the presentence investigation report (PSI) and to subpoena witnesses to rebut information in the PSI. The record shows that the sentencing hearing had already been once continued upon stipulation of the parties based, in part, on the need of the defense for additional time to prepare. Dopp's counsel received the PSI five days in advance of the hearing and reviewed it with Dopp two days before the hearing. The attorney acknowledged that he had made no effort to subpoena any witnesses. He gave no reason why he could not have subpoenaed or obtained statements from favorable witnesses before receiving the PSI, nor did he specify what information he expected to be able to provide should the continuance be granted. The court stated: "[I]t hasn't been shown to me that there are people or evidence out there that is [sic] critical to the issues on this sentencing; or, even if there were, that there has been any impossibility on the part of the defendant to get that information." The court's comment is supported by the record. Dopp has not demonstrated that the denial of his motion for a continuance was an abuse of the court's discretion.

---

7. I.R.E. 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

We are also unconvinced that the trial court erred by allowing the State to discuss a pending charge against Dopp. A sentencing court may, with due caution, consider alleged criminal activity by the defendant for which no charges have been filed or where charges have been dismissed. *State v. Kohoutek,* 101 Idaho 698, 619 P.2d 1151 (1980); *State v. Wickel,* 126 Idaho 578, 581, 887 P.2d 1085, 1088 (Ct.App.1994); *State v. Barnes,* 121 Idaho 409, 411, 825 P.2d 506, 508 (Ct.App.1992). At the time of sentencing, Dopp was awaiting trial on charges of kidnapping, aggravated battery, attempted rape, infamous crime against nature and felonious administration of drugs, all stemming from one incident unrelated to the present case. We perceive no impropriety in the prosecutor's mention of these charges during Dopp's sentencing hearing. Moreover, even if the prosecutor's reference to the unresolved charges was inappropriate, Dopp was not prejudiced, for the trial court explained that it would not weigh those charges in its sentencing decision:

> Let me say at the outset, Mr. Dopp, that even though I did allow Mr. Moss to make some statements about the case that is coming up for trial in January, I am not going to take those statements into account or consider them as far as determining what the appropriate sentence in this case might be.... I believe that the only thing that I can really fairly consider is the fact that you have been charged with those crimes. So, I tell you that I am not entertaining any preconceived notions about whether you will be found guilty or what the sentence might be in that case....

We hold that the trial court did not abuse its discretion by allowing the State to discuss the pending charges against Dopp.

We turn finally to Dopp's assertion that the trial court abused its discretion in imposing upon Dopp a determinate sentence of ten years' incarceration for aggravated battery with intent to commit rape.

When a sentence is challenged on appeal, we examine the record, focusing upon the nature of the offense and the character of the offender, to determine if there has been an abuse of the sentencing court's discretion. *State v. Young,* 119 Idaho 510, 808 P.2d 429 (Ct.App.1991). The defendant bears the burden to show that the sentence is unreasonably harsh in light of the primary objective of protecting society and the related goals of deterrence, rehabilitation and retribution. *State v. Brown,* 121 Idaho 385, 825 P.2d 482 (1992); *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). An abuse of discretion will be found only if, in light of the governing criteria, the sentence is excessive under any reasonable view of the facts. *State v. Charboneau,* 124 Idaho 497, 500, 861 P.2d 67, 70 (1993).

In fashioning Dopp's sentence, the court took note of the fact that Dopp had an extensive criminal record which included convictions for malicious injury to property, resisting arrest, and assault. In addition, he has been convicted several times for driving under the influence of alcohol, and during a two-year period of imprisonment he had been charged with eight violations of Department of Correction institutional policies. Psychological reports indicated that Dopp not only suffers from a personality disorder characterized by narcissistic and antisocial conduct but has an extensive history of drug and alcohol abuse and becomes violent when under the influence of these substances. We conclude that the district court, having thoughtfully considered the nature of the offense and Dopp's character, *see State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct. App.1982), did not abuse its discretion in imposing a sentence of ten years' incarceration for the crime of aggravated battery with intent to commit rape.

The judgment of conviction and sentence are affirmed.

WALTERS, C.J., and PERRY, J., concur.