32 P.3d 151

George PORTER, Petitioner–Appellant,

v.

STATE of Idaho, Respondent.

No. 26645.

Supreme Court of Idaho,
Idaho Falls, May 2001 Term.

Aug. 14, 2001.

Rehearing Denied Sept. 28, 2001.

Andrew Parnes, Ketchum, argued for appellant.

Hon. Alan G. Lance, Attorney General; L. Lamont Anderson, Deputy Attorney General, Boise, for respondents. L. Lamont Anderson argued.

WALTERS, Justice.

## NATURE OF THE CASE

This is a first degree murder case in which George Porter was accused of violently beating his former girlfriend to death. The Court is asked on appeal to review the district court's dismissal of Porter's second application for post-conviction relief. For the reasons stated below, we dismiss the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

George Porter was convicted of first degree murder for the death of his former girlfriend Teresa Jones. Responding to a report that Jones had not been seen for several days, police found Jones' body in the bedroom of her residence, naked and covered with a sleeping bag, on December 26, 1988. One of the officers testified that Jones had been severely beaten in the face, head, and lower body. Officers also testified that they found several clumps of human hair near the body which were of the same length and color as that of the victim. The pathologist who performed Jones' autopsy later testified that there were between three and six areas on Jones' scalp where the hair appeared to have been pulled out in large clumps.

Approximately eleven days before Porter's trial, the State disclosed that it intended to call several of Porter's former girlfriends to testify that Porter had, while beating them, also pulled out clumps of their hair. The State presented testimony of Lewis County Sheriff Don Fortney and Deputy Sheriff Randal Wadley, as well as an investigator for the Idaho Attorney General's Office, as an offer of proof regarding whether, in their experience with domestic violence crimes, they had found the act of pulling out clumps of hair unusual. After hearing this testimony, the district court, although declining to rule on its admissibility, informed Porter's counsel that he should be prepared to meet the evidence regarding Porter's prior misconduct.

During trial and over objection from Porter's counsel, the State introduced evidence that Porter had previously battered several of his girlfriends and, in the course of those beatings, pulled out clumps of their hair. The district court concluded that the evidence of Porter's hair pulling was admissible as demonstrating a particular signature or modus operandi. On January 26, 1990, the jury found Porter guilty.

On September 6, 1990, the district court granted Porter's trial counsel's motion to withdraw and appointed new counsel for purposes of litigating Porter's post-trial motions, petition for post-conviction relief, and direct appeal. On October 16, 1990, through his new counsel, Porter filed his first petition for post-conviction relief. Porter later amended his petition on April 25, 1994, and again on or about November 28, 1994. After an evidentiary hearing, the district court denied relief in March of 1995.

Porter timely filed notices of appeal, challenging his conviction, sentence, and the district court's denial of post-conviction relief. On August 27, 1997, this Court affirmed

Porter's conviction, sentence, and the district court's denial of post-conviction relief.[1]

After this Court issued its decision, Porter applied for a stay of execution and began habeas corpus proceedings in the U.S. District Court by filing a statement of issues regarding his habeas petition on May 11, 1998. On May 13, 1998, the federal court entered an order appointing the Capital Habeas Unit of the Federal Public Defenders of Eastern Washington to represent Porter in federal court. Porter filed a petition for writ of habeas corpus on December 11, 1998, and amended his petition on February 12, 1999.

On May 18, 1999, Porter filed his second post-conviction petition with the district court. Asserting that Porter's second post-conviction was barred by the operation of I.C. § 19–2719, the statute governing post-conviction procedures in capital cases, the State filed a motion to dismiss on October 18, 1999. In May of 2000, the district court, concluding that Porter had failed to present a *prima facie* case under I.C. § 19–2719, granted the State's motion. Porter appealed the district court's ruling, and the case is before this Court on the State's motion to dismiss the appeal.

## DISCUSSION

### A. Standard of Review

The expedited procedure for post-conviction review in capital cases is contained in I.C. § 19–2719. The statute provides a defendant with one opportunity to raise all challenges to the conviction and sentence in a petition for post-conviction relief, except in those unusual cases where it can be demonstrated that the issues were not known and reasonably could not have been known within the time frame allowed by the statute. *See* I.C. § 19–2719(5); *Fields v. State* , 135 Idaho 286, 17 P.3d 230 (2000); *State v. Rhoades,* 120 Idaho 795, 820 P.2d 665 (1991). A claim that reasonably could be known immediately upon the completion of the trial and can be raised in a post-conviction petition but is not raised in the first post-conviction petition is deemed waived. *See Fields,* 135 Idaho at 290, 17 P.3d at 234; *Rhoades,* 120 Idaho at 797, 820 P.2d at 667. Any successive petition for post-conviction relief not within the exception of subsection (5) of the statute shall be dismissed summarily. *See* I.C. § 19–2719(11).

### B. Porter's Claims

#### 1. Ineffective Assistance of Appellate Counsel

■ Porter first alleges in his second application for post-conviction relief that he received inadequate representation on appeal. Porter cites numerous errors that were not raised as issues on appeal and argues that his appellate counsel's ineffectiveness entitles him to post-conviction relief.[2] As a basis to dismiss these claims of

---

1. *See State v. Porter,* 130 Idaho 772, 948 P.2d 127 (1997), *cert. denied,* 523 U.S. 1126, 118 S.Ct. 1813, 140 L.Ed.2d 951 (1998).

2. Specifically, Porter claims that appellate counsel committed the following errors:

   "(a) Failing to raise the issue that disparate resources unfairly result in the arbitrary and capricious application of the death penalty; (b) Failing to challenge the lack of constitutionally adequate notice of the intent to seek death, the aggravating factors upon which the State would rely, and the evidence upon which the State would rely in aggravation; (c) Failing to argue or ensure that the Idaho Supreme Court fulfilled its statutory responsibilities on automatic review; (d) Failing to develop, submit, and argue residual doubt as a mitigating factor sufficient to make the imposition of the death sentence unconstitutional; (e) Failing to raise on appeal that facts supporting aggravating factors had been double counted in violation of

   [*State v. Osborn,*] 102 Idaho 405, 631 P.2d 187 (1981); (f) Failing to challenge the constitutionality of the revised death penalty scheme; (g) Failing to support with argument and authority the argument that Idaho Code § 18–4003 "torture murder" statute is unconstitutionally vague and ambiguous; (h) Failing to fully and adequately brief and argue issues of proportionality, excessiveness and passion and prejudice required to be automatically considered by the Idaho Supreme Court, I.C. § 19–2827; (i) Failing to raise the issue that the trial court failed to comply with Idaho Code § 19–2523 in its consideration of Petitioner's mental illness; (j) Failing to argue a violation of the Sixth and Fourteenth Amendments to the United States Constitution by the [S]tate's calling of the defense investigator as a witness for the [S]tate; (k) [F]ailing to raise the trial court's consideration of nonstatutory aggravation in violation of I.C. § 19–2515 and due process under *Hicks v. Oklahoma.*"

ineffectiveness, the district court concluded that the alleged errors had been waived pursuant to I.C. § 19–2719(5), as they were known or reasonably could have been known well before the filing of Porter's successive post-conviction petition for relief. We agree.

Claims not raised by a capital defendant within the forty-two day deadline of I.C. § 19–2719(4) are deemed waived if post-conviction relief claims were known or reasonably should have been known. *See* I.C. § 19–2719(5). Claims that were not known or could not have reasonably been known within forty-two days of judgment must be asserted within a reasonable time after they are known or reasonably could have been known. *See Paz v. State,* 123 Idaho 758, 760, 852 P.2d 1355, 1357 (1993). In *Paz,* the Court held that issues raised by appellate counsel were known at the time of the filing of the appellate brief and that claims asserted four years thereafter were not filed within a reasonable time. *See id.* More recently, in *Fields v. State,* the Court held that a two-and-one-half-year span from the date of the first appellate brief to the assertion of claims is an unreasonable length of time for the pursuit of post-conviction relief. *See Fields,* 135 Idaho at 290, 17 P.3d at 234.

Porter's initial appellate brief was filed on April 10, 1996. Porter's successive application for post-conviction relief, however, was not filed until May 18, 1999, more than three years from the time his appellate brief was filed. In addition, we note that Porter's second post-conviction petition was filed more than one year after the Federal Defenders' office was appointed to represent Porter for purposes of his federal habeas corpus petition and more than five months after Porter's habeas petition containing identical claims was filed in the U.S. District Court. We do not conclude that *Fields per se* bars consideration of Porter's claims because his application was filed more than two-and-one-half-years from the filing of the first appellate brief. However, following the principle in the *Paz* and *Fields* decisions that the issues raised or not raised by appellate counsel were known at the time of the filing of the first appellate brief, we hold that the three-year span from the date of Porter's first appellate brief to the assertion of his current claims is an unreasonable length of time for the pursuit of post-conviction relief.

### 2. *Brady* Claims

Porter next raises five claims regarding the State's failure to disclose "material exculpatory and impeaching evidence" by the prosecution at trial. Specifically, Porter contends that the State withheld: (1) evidence showing that Lewis County Sheriff Don Fortney and Deputy Sheriff Randal Wadley were not trained in domestic violence investigation; (2) evidence showing that Deputy Wadley "grossly overstated" his experience in investigating domestic violence incidents in Lewis County; (3) evidence showing that Sheriff Fortney "overstated the extent of his experience" investigating domestic violence incidents in Lewis County; (4) evidence showing that there were no reports to the Lewis County Sheriff's Office of "domestic violence incidents in Lewis County" in the years 1984 through 1989; and (5) evidence showing that there were 165 aggravated assaults in Lewis County from 1978 through 1990.

Porter asserts that the prosecution obtained its conviction based on the identification of Porter through his unique "signature"—hair pulling during the course of a domestic battery. He contends that the trial court admitted evidence of Porter's hair pulling as a prior bad act based on the accuracy of the testimony by Sheriff Fortney and Deputy Wadley. Without their testimony, Porter argues, the evidence of his prior bad acts would not have been admissible. But for the failure of the prosecution to disclose the exculpatory information regarding the lack of training and experience of these two witnesses, Porter contends that the evidence of the prior bad acts would not have been admissible, and it therefore is "reasonably likely that [Porter] would not have been convicted of first degree murder by torture and would not have been sentenced to death." We disagree with Porter's arguments.

The due process guarantees of the Fifth and Fourteenth Amendments to the United States Constitution mandate that the prosecution disclose exculpatory evidence in

the government's possession to an accused person. *See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963); *State v. Dopp,* 129 Idaho 597, 605, 930 P.2d 1039, 1047 (Ct.App.1996); *State v. Owens,* 101 Idaho 632, 638, 619 P.2d 787, 793 (1979). The duty to disclose is irrespective of good or bad faith on the prosecution's part. *See Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218.

■ The defendant's right to due process is violated where the prosecution fails to disclose exculpatory evidence that is material either to guilt or punishment. *See Dopp,* 129 Idaho at 606, 930 P.2d at 1048; *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413, 419–20 (1984). Evidence is material for purposes of due process analysis "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985); *see also Dopp,* 129 Idaho at 606, 930 P.2d at 1048. Whether evidence is material for purposes of due process analysis is a question of law, over which this Court exercises free review. *See Dopp,* 129 Idaho at 606, 930 P.2d at 1048.

■ In *McKinney v. State,* however, the Court noted that even if the State violated a petitioner's right to due process by withholding evidence, the petitioner was required to raise this issue, like other constitutional issues, within the time frame mandated by I.C. § 19-2719. *See McKinney,* 133 Idaho at 706–07, 992 P.2d at 155–56. Thus, the Court initially examines whether the information alleged by Porter to be exculpatory reasonably should have been known at the time of Porter's first post-conviction petition. We conclude that it was.

The information upon which Porter relies was readily available at the time of his trial and during the four years Porter litigated his first post-conviction relief case. For example, Porter's counsel explains in an affidavit attached to Porter's second post-conviction petition that in order to obtain the information regarding the officer's training and experience, he merely wrote a letter and personally spoke with Sheriff Fortney.

Porter also relies upon the domestic violence and aggravated assault statistics obtained from the Idaho Department of Law Enforcement. But Porter's counsel acknowledges that to obtain this information, he merely called the Department and obtained three pages of Lewis County crime statistics by facsimile the same day. Porter's argument is even less convincing considering the district court's statement that on December 22, 1989, it instructed Porter's trial counsel to be prepared to meet the testimony of the officers on the prior bad acts issue and authorized trial counsel to hire a second investigator to prepare to meet this evidence.

We also note that Porter's use of the statistical information from the Department of Law Enforcement, as well as the affidavit submitted by Porter's counsel, is somewhat misleading. The affidavit indicates that there were no "domestic violence incidents" reported in Lewis County from 1984 to 1989. As the district court observed, however, "domestic violence" did not exist as a crime in Idaho from 1984 through 1989. *See* I.C. § 18–918 (enacted in 1993 and defining new crimes of domestic battery and assault). This serves to explain the lack of "domestic violence incidents" reported in Lewis County during that time. In addition, the Department of Law Enforcement statistics submitted by Porter's counsel cover only "aggravated assault" to the exclusion of other crimes as simple battery, simple assault, and aggravated battery. Moreover, as the district court recognized, while the affidavit submitted by Porter's counsel states that Lewis County officer training records "do not include any training denominated as relating in any way to domestic violence," there is nothing attached to the affidavit which provides competent evidence that the officers in question did not have adequate "on the job" training or experience in domestic violence cases, as they testified to at trial.

In sum, Porter alleges that because the State did not provide him with the above information at the time of trial, it was not possible for him to have reasonably known of its existence. However, despite the fact that this information was not discovered until well

after the litigation over Porter's first post-conviction petition had been completed, we hold that the information regarding the officers' domestic violence experience and training, as well as the Lewis County crime statistics, could reasonably have been known to either Porter or his counsel at the time he filed his first petition for post-conviction relief.

### 3. Constitutional Claims

Porter also challenges the constitutionality of I.C. § 19-2719. That issue, however, was not raised in the lower court. The Court adheres to the principle that it will not consider issues that are raised for the first time on appeal. *See Row v. State,* 135 Idaho 573, 580, 21 P.3d 895, 902 (2001). The exception to this rule is that constitutional issues may be considered for the first time on appeal if such consideration is necessary for subsequent proceedings in the case. *See id.* Because it does not appear that there are any subsequent proceedings in this case, we hold that the exception does not apply and therefore decline to consider the constitutional arguments raised by Porter for the first time on appeal.

### CONCLUSION

Because the claims raised by Porter were known or reasonably should have been known well prior to the filing of the second amended petition, the order of dismissal is not appealable, and we grant the state's motion to dismiss. Accordingly, the appeal is dismissed.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN, CONCUR.