183 P.3d 782

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jennifer Elizabeth EDNEY, aka Billie Edney, Defendant–Appellant.**

No. 33919.

Court of Appeals of Idaho.

April 22, 2008.

Greg S. Silvey, Kuna, for appellant.

Lawrence G. Wasden, Attorney General; Daniel W. Bower, Deputy Attorney General, Boise, for respondent.

SCHWARTZMAN, Judge Pro Tem.

Jennifer Elizabeth Edney appeals from her judgment of conviction for trafficking in methamphetamine.

## I.

### FACTUAL & PROCEDURAL BACKGROUND

Edney and her boyfriend, Travis Jones, were living with her mother. When Edney's mother returned from a vacation, she discovered several unusual items in her kitchen. Suspecting drug manufacturing, the mother contacted the police and consented to a search of the home. The police subsequently contacted Edney and Jones, who also consented to a search. In a common stairwell, accessible by all occupants of the four-plex apartment building, the detectives discovered a cardboard box and plastic milk crate containing items used to manufacture methamphetamine.[1] In one of the containers, the detectives also found a prescription bottle of pills with Jones's name on it and an empty prescription bottle with Edney's name on it. The methamphetamine lab was transported to the evidence bay where it was processed, photographed, and tested. After the samples were taken from the lab, the hazardous portions were destroyed. No fingerprinting was performed.

At Edney and Jones's joint trial, the officers who conducted the search testified that Jones admitted to manufacturing methamphetamine, and that Edney admitted to helping by stripping matchbox striker plates to extract phosphorus and sampling the methamphetamine to evaluate its quality. Edney and Jones denied making these statements. None of these conversations were recorded.

Prior to trial, Edney moved to dismiss and exclude the evidence, claiming that the destruction of the lab violated her due process rights because, had the lab been tested for her fingerprints, this evidence would have been exculpatory. The district court denied these motions, finding that identity

1. These items included: acetone, Coleman fuel tanks, HEET, peroxide, full and empty iodine bottles, stained plastic baggies, tubing attached to a large soda bottle, matches with used striker plates, a glass methamphetamine pipe, a hot plate, a bindle of methamphetamine, various glassware, a Pyrex measuring cup, and several used coffee filters.

was not an issue and that the evidence had not been destroyed in bad faith. Edney also requested two instructions concerning how the jury could interpret the destruction of the methamphetamine lab and the state's decision not to record Edney's admissions. The court declined to give these instructions, but permitted counsel to make the same claims during closing argument. The jury found Edney guilty of trafficking in methamphetamine, Idaho Code § 37–2732B(a)(3). She appeals, contending that the district court erred in denying her motion to suppress and in declining to give the requested jury instructions.

## II.

### DISCUSSION/ANALYSIS

#### A. Destruction of the Methamphetamine Lab

 Edney argues that the district court should have granted her motion to suppress because the destruction of the methamphetamine lab violated her due process rights. On review of a decision to grant or deny a motion to suppress evidence, the Court employs a split standard of review. The Court will defer to the trial court's findings of fact unless they are clearly erroneous. *State v. Hawkins,* 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct.App.1998). However, the Court exercises free review over the application of constitutional standards to those facts. *Id.*

In *State v. Lewis,* 144 Idaho 64, 156 P.3d 565 (2007), the Idaho Supreme Court recently stated the applicable analysis when the state destroys evidence:

The due process clause of the Fourteenth Amendment requires that criminal prosecutions comport with prevailing notions of fundamental fairness. Fundamental fairness requires a meaningful opportunity to present a complete defense, which in turn requires "what might loosely be called the area of constitutionally guaranteed access to evidence." *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413[, 419] (1984) (quoting *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3447,

73 L.Ed.2d 1193[, 1203] (1982)). Under this doctrine the state has a duty to disclose to the defendant all material exculpatory evidence known to the state or in its possession. *Brady v. Maryland,* 373 U.S. 83, 86–88, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215[, 218–19] (1963); *Grube v. State,* 134 Idaho 24, 27, 995 P.2d 794, 797 (2000); *cf. United States v. Agurs,* 427 U.S. 97, 111–12, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342[, 354] (1976). Implicit in this duty to disclose exculpatory evidence is a duty to preserve such evidence for use by the defense. *See State v. Fain,* 116 Idaho 82, 92, 774 P.2d 252, 262 (1989) (citing *People v. Hitch,* 12 Cal.3d 641, 117 Cal. Rptr. 9, 527 P.2d 361 (1974)).

Destruction of evidence is not a per se violation of a defendant's rights and depends upon the nature of the proceeding, nature of the evidence, and the circumstances surrounding the destruction of the evidence. *Garcia v. State Tax Comm'n of the State of Idaho,* 136 Idaho 610, 615, 38 P.3d 1266, 1271 (2002). In a criminal context, this Court has applied a balancing test which examines: "(1) whether the evidence was material to the question of guilt or the degree of punishment; (2) whether the defendant was prejudiced by the loss or destruction of the evidence; and (3) whether the government was acting in good faith when it destroyed or lost the evidence." *Id.* (quoting *State v. Porter,* 130 Idaho 772, 781, 948 P.2d 127, 136 (1997)).... Where the value of the evidence is known, the person asserting the due process violation has the affirmative burden of establishing the materiality and prejudice elements of the balancing test. *Id.* Where the value of the evidence is unknown, the materiality and prejudice elements are presumed and the inquiry focuses on the presence of bad faith. *Id.*

*Lewis,* 144 Idaho at 66–67, 156 P.3d at 567–68.

 In this case, because the value of any fingerprint testing on the methamphetamine lab is unknown, we presume materiality and prejudice. We agree with the district court, however, that Edney has not shown bad faith. As the United States Supreme

Court has said, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (1988). Bad faith is more than mere negligence. Instead, it refers to "a calculated effort to circumvent the disclosure requirements" under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Lewis,* 144 Idaho at 67, 156 P.3d at 568. *See and compare Youngblood,* 488 U.S. at 58, 109 S.Ct. at 337, 102 L.Ed.2d at 289 (holding that the failure of police to protect samples that might have been on victim's clothing or perform tests on semen samples was negligent at most); *Lewis,* 144 Idaho 64, 156 P.3d 565 (unintentional loss of recording was not bad faith, and neither could bad faith be inferred from police department's use of an inferior recording system without some indication that the government has acted suspiciously with respect to a particular item or category of potential evidence); *Stuart v. State,* 127 Idaho 806, 907 P.2d 783 (1995) (concealment of the fact that the defendant's telephone conversation had been recorded rose to the level of bad faith); *State v. Casselman,* 141 Idaho 592, 114 P.3d 150 (Ct.App.2005) (loss of photographs of victim's injuries not bad faith when no evidence that police intentionally destroyed or lost the photographs in an attempt to prevent defendant from obtaining exculpatory evidence for use at trial); *State v. Dopp,* 129 Idaho 597, 607, 930 P.2d 1039, 1049 (Ct.App.1996) (no bad faith from destruction of sweatshirt that the victim alleged that the defendant tore when evidence did not support a conclusion that law enforcement staff disposed of the sweatshirt in an effort to prevent defendant from obtaining exculpatory evidence for use at trial).

In this case, law enforcement officials destroyed the hazardous portions of the methamphetamine lab, which contained potentially toxic chemicals, pursuant to departmental policy. Furthermore, the police had no reason to believe that fingerprints, or the absence thereof, on the lab equipment would have potentially exculpatory value, particularly in light of their knowledge of the presence of a prescription bottle in Edney's name in one of the boxes, and Edney's admissions that she participated in the manufacturing process by stripping phosphorous from matchbook striker plates and sampling the methamphetamine to evaluate its quality. Under these circumstances, Edney has not demonstrated that the destruction of the hazardous portions of the lab was done in bad faith, i.e. as part of a calculated attempt to prevent the discovery of exculpatory evidence.

## B. Jury Instructions

Edney also requested two specific jury instructions concerning the state's decision not to record her admissions and the destruction of the methamphetamine lab. The district court declined to give these instructions, reasoning that they constituted improper commentary on the evidence. A trial court must inform the jury on "all matters of law necessary for their information." I.C. § 19–2132(a). A requested instruction must be given if: (1) it properly states the governing law; (2) a reasonable view of at least some evidence would support the defendant's legal theory; (3) the subject of the requested instruction is not addressed adequately by other jury instructions; and (4) the requested instruction does not constitute an impermissible comment as to the evidence. *State v. Henry,* 138 Idaho 364, 367, 63 P.3d 490, 493 (Ct.App.2003). Because the propriety of a jury instruction is a question of law, on appeal we exercise free review. *State v. Avila,* 137 Idaho 410, 414, 49 P.3d 1260, 1264 (Ct.App.2002). Jury instructions are viewed as a whole, not individually, to determine whether the jury was properly and adequately instructed on the applicable law. *State v. Rozajewski,* 130 Idaho 644, 646, 945 P.2d 1390, 1392 (Ct.App.1997). To be reversible error, the instructions as given must mislead the jury or prejudice the defendant. *State v. Macias,* 142 Idaho 509, 510, 129 P.3d 1258, 1259 (Ct.App.2005).

### 1. Instruction on recording interviews

We first address Edney's argument that the district court should have given an instruction regarding the officer's decision

not to record her admissions. This proposed instruction stated that

> You have heard testimony that the defendant made statements to law enforcement officers. These statements were not recorded. During your deliberations, you may take into consideration the fact that the law enforcement officers chose not to record these conversations for purposes of evaluating the officers' credibility, ability to recall, and the accuracy and truthfulness of their account of the events.

We already addressed this precise issue in Jones's appeal, decided earlier this year. *State v. Jones*, 145 Idaho 639, 181 P.3d 1247 (Ct.App.2008). In light of the general instruction to the jury on credibility determinations, we held that the jury did not need to be so instructed, although it is certainly proper for counsel to argue that the lack of a recording may cast doubt on the truthfulness of an officer's testimony. For the same reasons, which we need not repeat in detail here, we hold that the district court did not err in declining to give such an instruction in Edney's case.[2]

## 2. Instruction on spoliation of evidence

■ We next address Edney's argument that the district court erred in declining to give an instruction on the spoliation of evidence. This proposed instruction stated:

> If you determine that the State has lost, destroyed, or failed to preserve evidence whose contents or quality are important to the issues in this case, and that the explanation for the loss, destruction, or failure to preserve is inadequate, then you may infer that the evidence was unfavorable to the State.

This instruction was a return to Edney's theory that fingerprints (or, more precisely,

the lack thereof) on the destroyed methamphetamine lab would have exculpated her.

Edney contends that support for such an instruction is found in *State v. Fain*, 116 Idaho 82, 774 P.2d 252 (1989). In that case, the defendant was convicted of first degree murder, lewd and lascivious conduct, and first degree kidnapping. In an autopsy of the victim's body, a pathologist took several swabs of bodily fluid, but inadvertently discarded those swabs. The defendant brought a motion to dismiss on the ground that the state had been unable to produce these potentially exculpatory swabs. The Supreme Court took particular note of the materiality and possibility of prejudice from the missing swabs. It noted the special materiality of this physical evidence in the context of this trial for a rape and murder, where the presence of semen or fluid that did not match the defendant would have been strongly exculpatory. The Court ultimately held that the defendant's due process rights were not violated. Nevertheless, applying a balancing approach, it indicated that the degree of prejudice to the defendant outweighed the degree of culpability of the state in failing to preserve material evidence, and thus that the defendant was entitled to some kind of remedy. It held, however, that dismissal was too extreme a sanction and suggested that a jury instruction would have mitigated the prejudice to the defendant.[3] It then held that, given the evidence against the defendant, even if it were to remand the case for a retrial with an instruction, there was no likelihood that the result would have been changed, and so declined to reverse the conviction.

In this case, as we have previously indicated, there is no due process violation. Further, the prejudice to Edney and the materi-

---

2. Despite our holding today, we nevertheless reiterate our admonishment that audio recording by law enforcement officers of their encounters with suspects circumvents a host of difficult and time-consuming issues that regularly appear in trial and on appeal.

3. The Court proposed the following instruction: You may take note of the fact that the state had obtained bodily fluid samples from the body of the victim, that such samples are, as a matter of law, material evidence in that scientific tests

are available which may exclude an individual from that class of persons who could have committed the crime, that the state lost or destroyed the samples, and that the defendant therefore did not have an opportunity to conduct such tests. The fact that the state lost or destroyed the samples does not, in itself, require that you acquit the defendant. It is, however, one factor for you to consider in your deliberations. *Id.* 116 Idaho at 96, 774 P.2d at 266.

ality of the evidence are significantly less than in *Fain*, where the Court noted that the presence of a fluid such as semen in the body of a murdered nine-year-old that does not match the defendant is strongly indicative of the defendant's innocence. The absence of a defendant's fingerprints is far less material. The state did not need to prove that Edney actually cooked the methamphetamine, given her admissions and other circumstantial evidence. Further, the government's actions in this case were significantly more innocuous than in *Fain*, where the government's explanation for losing the swabs was, at best, "less than clear." *Id.* at 94–95, 774 P.2d at 264–65. In this case, the destruction of the methamphetamine lab equipment was done for safety purposes pursuant to departmental policy. In sum, the reasons justifying the remedy of an instruction in *Fain* are not present in Edney's case, and the defense was permitted to argue its theory to the jury.

## III.

## CONCLUSION

For the above-stated reasons, we affirm the judgment of conviction for trafficking in methamphetamine.

Chief Judge GUTIERREZ and Judge PERRY concur.