# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 45967

|  |  |
|---|---|
| WYLIE GAIL HUNTER, | ) |
|  | ) **Filed:  September 27, 2019** |
| Petitioner-Appellant, | ) |
|  | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
|  | ) **THIS IS AN UNPUBLISHED** |
| STATE OF IDAHO, | ) **OPINION AND SHALL NOT** |
|  | ) **BE CITED AS AUTHORITY** |
| Respondent. | ) |
|  | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County.  Hon. Lansing Haynes, District Judge.

Order summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Wylie Gail Hunter appeals from the district court's order summarily dismissing his successive petition for post-conviction relief.  We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

This Court previously considered Hunter's direct appeal, which challenged the district court's partial denial of his motion to suppress evidence from a traffic stop and a subsequent vehicle search.  *State v. Hunter*, Docket No. 36728 (Ct. App. June 16, 2011) (unpublished).  The following facts, which are important to this appeal's resolution, were set forth in that opinion:

> In 2007, Idaho State Police Detective Terry Morgan began investigating Hunter for drug smuggling.  Detective Morgan had received information that Hunter would obtain a rental car, drive to the Canadian border, pick up marijuana, and return to Coeur d'Alene.  Based upon this and other information, ISP began

1

tracking Hunter's car rentals through the rental company and notified the rental company that it should contact ISP when Hunter rented a vehicle. On September 2, 2007, an employee of the rental company contacted ISP to inform them that Hunter had rented a vehicle that morning. Detective Morgan obtained the make, model, and license plate number of the car and waited on Highway 95 at Athol for the car to drive past. At approximately 2:22 p.m., Detective Morgan saw Hunter drive by in the vehicle. Detective Morgan testified that he observed Hunter exceed the speed limit and commit two illegal lane changes. Because he was in an unmarked vehicle, Detective Morgan notified Trooper Ronald Sutton regarding the traffic infractions and advised Trooper Sutton to pull the vehicle over.

At approximately 2:38 p.m., Trooper Sutton stopped the vehicle and, after obtaining Hunter's license and registration, went around to the passenger side of the vehicle to collect the passenger's identification. While speaking with the passenger, Chase Storlie, Trooper Sutton detected a faint odor of raw marijuana coming from the vehicle, which he relayed to Detective Morgan, who had stopped behind the patrol car shortly after the stop. Hunter was removed from the vehicle and asked to sit on the front bumper of the patrol car. Detective Morgan then contacted Hunter and asked him where he was coming from and where he was going. Hunter told Detective Morgan that he had driven an old pickup from Arizona to have some service work done, that he rented a vehicle in Coeur d'Alene, picked up Storlie, and drove to Sandpoint for breakfast. Detective Morgan then approached the rental vehicle to speak with Storlie and detected an odor of marijuana. Storlie told Detective Morgan that he met Hunter at the rental car agency, and they then went to Sandpoint for breakfast. At that time, Detective Morgan noticed three boxes of heat-seal plastic bags behind the driver's seat. Detective Morgan testified that based upon his training and experience, it is common for those types of bags to be used to package marijuana. Hunter informed Detective Morgan that the heat-seal bags were in the vehicle at the time he rented the vehicle. Storlie told Detective Morgan that he and Hunter had purchased the bags that morning for Storlie's wife because she used them for canning and freezing food. Detective Morgan testified that, based upon his previous investigation, he knew that Storlie was not married. Thereafter, Trooper Sutton placed Hunter in handcuffs for "officer safety" reasons.

After observing the traffic violations, Detective Morgan also called Officer Richard Reinking in order to have a drug detection dog at the scene. At the time of the stop, Officer Reinking was involved in another criminal matter and, as such, responded to the scene approximately thirty minutes after the stop. The drug dog alerted on the trunk of the vehicle, and the officers located two large hockey bags with approximately seventy-five pounds of marijuana inside.

Hunter was charged with trafficking in more than twenty-five pounds of marijuana. He filed a motion to suppress, claiming that the officers lacked reasonable suspicion to stop the vehicle and probable cause to search it. The district court held a hearing where it granted in part, and denied in part, Hunter's motion to suppress.

*Hunter*, Docket No. 36728.

When this Court resolved Hunter's direct appeal, the Court focused on the district court's ruling that the traffic violations provided reasonable suspicion to stop Hunter. Hunter did not challenge on appeal the district court's alternative ruling that Detective Morgan's investigation prior to the stop also provided reasonable suspicion for the stop. *Id.* Regardless, this Court concluded it could affirm the district court's reasonable suspicion ruling on the unchallenged, alternative ruling. *Id.* Specifically, this Court concluded that "the officers had reasonable and articulable suspicion to stop the vehicle based upon *both* the prior investigation, as well as the traffic violations." *Id.* (emphasis added).

On direct appeal, this Court also affirmed the district court's ruling that the officers had probable cause to search the vehicle. *Id.* Although the Court concluded that the odor of marijuana alone satisfied the probable cause requirement for a warrantless search of the vehicle, the Court also noted numerous other facts supporting a finding of probable cause, including that (1) Detective Morgan had been investigating Hunter for drug smuggling for several months; (2) during this investigation, Detective Morgan obtained details about Hunter's smuggling operation from Storlie's ex-girlfriend, including that Hunter used rental cars, smuggled marijuana across the Canadian border, usually stayed at the same hotel in Canada, and used certain types of smuggling equipment; (3) Detective Morgan had confirmed each of these details through his review of hotel receipts, of rental car receipts, and of the rental cars' mileage and also through his knowledge that Hunter was on felony probation for smuggling large amounts of cash across the border and a search related to that crime had yielded smuggling equipment of the type Storlie's ex-girlfriend had described; and (4) heat-seal plastic bags, which are commonly used to package marijuana, were in the vehicle when Trooper Sutton stopped Hunter. *Id.* Additional facts supporting probable cause included that: Hunter and Storlie had inconsistent stories about why the heat-seal bags were in the vehicle; Storlie claimed the bags were for his wife when Detective Morgan knew from his prior investigation that Storlie was not married; and the drug dog alerted on the vehicle. *Id.*; *see also Hunter v. State*, Docket No. 41992 (Ct. App. June 19, 2015) (unpublished) (concluding drug dog alert supported probable cause).

After this Court affirmed Hunter's conviction, Hunter filed a petition for post-conviction relief, asserting ineffective assistance of counsel. The district court summarily dismissed Hunter's petition, and this Court affirmed. *Hunter*, Docket No. 41992. Hunter then filed a successive petition for post-conviction relief, alleging the State violated both his federal and his

3

state due process rights by failing to disclose a DVD in violation of *Brady v. Maryland*, 373 U.S. 83, 86 (1963), and also by subsequently destroying the DVD.

Hunter contends the destroyed DVD contained a video recording of the traffic stop that Trooper Sutton created. Hunter's contention is based on his claim that he personally knows Trooper Sutton recorded the stop and on a document Hunter discovered through his post-conviction efforts to collect public information about the stop. This document references a DVD, Trooper Sutton, and a date range including the date of Hunter's traffic stop. Assuming the DVD actually contained a recording of the traffic stop, the document incorrectly indicates the DVD does not relate to a felony but also inconsistently includes the description "felony tracking." Finally, the document indicates the Idaho State Police (ISP) destroyed the DVD in February 2013. According to an affidavit of an ISP employee tasked with ensuring compliance with ISP record retention policies, the DVD was destroyed pursuant to an ISP policy providing that DVDs unrelated to felonies are to be destroyed after five years.

After Hunter conducted certain discovery in support of his successive petition, the State filed a motion for summary dismissal. After numerous continuances, the district court held a hearing at which it granted the State's motion. The district court found that the State had failed to disclose the DVD; the DVD may or may have not been exculpatory; and Hunter failed to provide admissible evidence that the State acted in bad faith. Based on these findings, the district court summarily dismissed Hunter's successive petition, and Hunter timely appeals.

## II.

## STANDARD OF REVIEW

A petition for post-conviction relief initiates a proceeding that is civil in nature. Idaho Code § 19-4907; *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004). A petition must contain much more than a short and plain statement of the claim that would suffice for a complaint under Idaho Rule of Civil Procedure 8(a)(1). Rather, a petition for post-conviction relief must be verified with respect to

4

facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached or the petition must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations, or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code Section 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

5

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. Over questions of law, we exercise free review. *Rhoades*, 148 Idaho at 250, 220 P.3d at 1069; *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

## III.

## ANALYSIS

As an initial matter, we note the record is somewhat unclear whether Hunter is asserting both a *Brady* violation for nondisclosure of the DVD and also a claim for destruction of evidence. *See Arizona v. Youngblood*, 488 U.S. 51, 56-58 (1988) (setting forth standard for analysis of due process violation for failure to preserve evidence). At oral argument, Hunter argued he was only asserting a single claim based on the State's conduct, and in response, the State took the position Hunter could not assert a *Brady* violation after the State destroyed the DVD. Nevertheless, Hunter cites *Brady* in his successive petition and alleges that both the State's failure to disclose the DVD and its failure to preserve the DVD violated his due process rights. Further, the parties have referred to both the *Brady* and *Youngblood* standards at various times in the record, including in their summary dismissal briefing and their appellate briefing. Accordingly, we address Hunter's allegations under both standards.

A.      **Hunter Failed to Establish a Genuine Factual Issue of a *Brady* Violation**

On appeal, Hunter argues he has "met the standard for showing a due process violation set forth in . . . *Brady*." The State responds that, contrary to *Brady*, Hunter failed to present evidence that the DVD was exculpatory and failed to show prejudice. We agree Hunter failed to establish a genuine issue of material fact of a *Brady* violation.

6

The State has a duty under *Brady* and its progeny to disclose to the defendant all material exculpatory evidence known to it or in its possession. *State v. Lewis*, 144 Idaho 64, 66-67, 156 P.3d 565, 567-58 (2007). To establish a *Brady* violation, the petitioner must show three elements: "[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." *Thumm v. State*, ___ Idaho ___, ___, ___ P.3d ___, ___ (Aug. 22, 2019). Prejudice is shown where the favorable evidence "is material" and "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." *Id.* A reasonable probability is shown when the State's failure to disclose evidence "undermines the confidence in the outcome of the trial," but such a showing requires a substantial likelihood of a different result, not just a conceivable likelihood. *Id.* "[E]vidence is material for purposes of a due process analysis if there is a reasonable probability that disclosure of the undisclosed evidence would have produced a different outcome in the proceeding." *Id.*

The State does not dispute it failed to disclose the DVD. When Hunter requested that the State produce any recordings of the traffic stop, the State responded that none existed. Accordingly, our analysis focuses on the second and third elements of a *Brady* violation, i.e., whether the DVD was exculpatory and whether its suppression prejudiced Hunter.

Hunter argues the State's failure to disclose the DVD prejudiced him because he was not able to effectively dispute the officers' testimony and to undermine their credibility at the suppression hearing. Hunter's argument, however, misapprehends his burden to show prejudice. The Idaho Supreme Court has ruled that to establish prejudice for purposes of a *Brady* violation, a petitioner must show a substantial likelihood of a reasonable probability that the evidence's disclosure would have produced a different outcome in the proceeding. *Thumm*, ___ Idaho at ___, ___ P.3d at ___. Hunter's assertion that the DVD would have shown inconsistencies in the officers' testimony is inadequate to show a genuine material factual issue of prejudice.

Indeed, Hunter's speculation about the DVD's contents actually shows the DVD would not have likely produced a different outcome. According to Hunter's affidavit submitted in support of his successive petition, the DVD would have shown that: (1) Trooper Sutton never approached the vehicle's passenger side; (2) Detective Morgan took four to six minutes to arrive at the scene; (3) Detective Morgan did not observe traffic violations because he was never

7

following Hunter's vehicle; (4) Detective Morgan never approached the vehicle's passenger side; (5) Detective Morgan was driving a different vehicle than he testified he was driving when Trooper Sutton stopped Hunter; and (6) traffic was heavy at the time of the stop.

That Trooper Sutton's recording of the stop of Hunter would have contained some of these facts is difficult to imagine. For example, that Trooper Sutton's recording of the stop of Hunter's vehicle would have shown what Detective Morgan witnessed several minutes before that stop is highly unlikely. Regardless, even assuming the DVD would have shown the facts Hunter alleges, those facts bear on whether Detective Morgan actually witnessed Hunter commit traffic violations and whether the officers detected a marijuana odor on the vehicle's passenger side. As discussed above, however, the district court's finding of reasonable suspicion and probable cause are alternatively based on facts independent of the traffic violations and the marijuana odor, such as Detective Morgan's prior investigation, the presence of heat-seal bags, Hunter's and Storlie's inconsistent stories, and the drug dog's alert on the vehicle. As a result, the facts Hunter contends the DVD contained would not have likely resulted in Hunter's motion to suppress being granted, and thus Hunter has failed to show a genuine material factual issue regarding prejudice.

Hunter also fails to show a genuine material factual issue that the DVD was exculpatory. Relying on *Stuart v. State*, 127 Idaho 806, 907 P.2d 783 (1995), Hunter argues the State's concealment of the DVD shows its exculpatory value. *Stuart*, however, is distinguishable. In that case, Stuart appealed the district court's dismissal of his petition for post-conviction relief claiming the State taped his attorney-client communications and failed to disclose a tape recording of a conversation he had with his sister. *Id.* at 812, 907 P.2d at 789. The district court dismissed Stuart's claims. *Id.*

On appeal, the Idaho Supreme Court concluded that the taped telephone call between Stuart and his sister would not have been exculpatory but that the logbook's intentional destruction was attributable to the sheriff's office. *Id.* at 814, 907 P.2d at 791. Further, the Court concluded "the failure to provide discovery regarding the [nonexculpatory] taped phone call is a sufficiently proximate cause of the destruction of the phone log evidence as to rise to the level of bad faith under [*Youngblood*, 488 U.S. 51 (setting forth standard for due process violation for failure to preserve evidence)]." *Stuart*, 127 Idaho at 816, 907 P.2d at 793. The Court reasoned that "although the prosecution did not conceal the existence of the phone logs, it did conceal the

8

existence of the tape-recording of Stuart's phone call to his sister which, if disclosed, would have inevitably led to further discovery regarding the sheriff's surreptitious tape recording sufficient to preserve the phone logs." *Id.* Regarding the destroyed phone log, the Court acknowledged "[t]he 'exculpatory value' of the destroyed evidence is, concededly, indirect in [Stuart's] case" but because of "the unique context" of the case, Stuart established the phone log's exculpatory value. *Id.* at 814 n.7, 907 P.2d at 791 n.7.

Hunter asserts that because the State did not disclose the DVD, it must have known the DVD was exculpatory based on the *Stuart* Court's statement that "concealment is one method of proving the exculpatory value of the evidence." *See id.* at 816, 907 P.2d at 793. Notably, however, the *Stuart* Court made this statement in the context of an analysis of *Youngblood*, which addresses a due process violation for the failure to *preserve* evidence versus a *Brady* violation for a failure to *disclose* evidence. We are not persuaded the mere fact of the State's nondisclosure of the DVD alone satisfies Hunter's burden to show a genuine material factual issue that the DVD was exculpatory for purposes of a *Brady* violation. Accepting Hunter's argument would effectively eliminate the first element of the test for a *Brady* violation: Every petitioner could simply avoid proving the exculpatory value of previously nondisclosed evidence by simply asserting the State's nondisclosure itself established the evidence's exculpatory value. Because Hunter has failed to raise a genuine issue of material fact that the DVD had exculpatory value and also that its suppression prejudiced him, the district court did not err in dismissing Hunter's *Brady* claim.

**B.     Hunter Failed to Establish a Genuine Factual Issue That the State Acted in Bad Faith**

On appeal, Hunter challenges the district court's summary dismissal of his claim that the State violated his due process rights by destroying the DVD. In support, he argues "he raised a genuine issue of material fact [that the DVD] was destroyed in bad faith" because the State destroyed it "in contravention of the [ISP] policies regarding retention of evidence." The State's duty to preserve evidence for a defendant is implicit in the State's duty to disclose exculpatory evidence. *Lewis*, 144 Idaho at 67, 156 P.3d at 568. The State's destruction of evidence is not a per se violation of a defendant's rights. *Id.* Rather, whether a due process violation has occurred depends on the nature of the proceedings, of the evidence, and of the circumstances surrounding the destruction. *Id.* To determine if the State violated a defendant's due process rights by failing to preserve evidence, the Idaho Supreme Court has applied a balancing test which examines:

9

(1) whether the evidence was material to the defendant's guilt or punishment; (2) whether the evidence's loss or destruction prejudiced the defendant; and (3) whether the government was acting in good faith when it destroyed or lost the evidence. *Id.*; *see also California v. Trombetta*, 467 U.S. 479, 489 (1984) (requiring showing of exculpatory value apparent before destruction and defendant's inability to obtain comparable evidence by reasonably available means); *Youngblood*, 488 U.S. at 58 (additionally requiring showing police acted in bad faith).

Unlike the federal analysis applied under *Trombetta* and *Youngblood* to establish a due process violation for destruction of evidence, the Idaho Supreme Court in *Lewis* applies a presumption in the petitioner's favor when the destroyed evidence's exculpatory value is unknown: "Where the value of the evidence is unknown, the materiality and prejudice elements are *presumed* and the inquiry focuses on the presence of bad faith." *Lewis*, 144 Idaho at 67, 156 P.3d at 568 (emphasis added). "Bad faith is more than mere negligence." *Id.* Bad faith refers to "a calculated effort to circumvent the disclosure requirements established by [*Brady*] and its progeny." *Trombetta*, 467 U.S. at 488. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood*, 488 U.S. at 58.

In this case, the district court correctly concluded the DVD's exculpatory value is unknown. As a result, materiality and prejudice are presumed according to *Lewis* and our inquiry focuses on whether the State acted in bad faith by destroying the DVD.[1] *See Lewis*, 144 Idaho at 67, 156 P.3d at 568. Hunter argues the State acted in bad faith because: (1) the State failed to produce the DVD in response to Hunter's discovery request; (2) the DVD was "destroyed in contravention of the [ISP] policies regarding retention of evidence"; and (3) the DVD was inconsistently marked as both relating and not relating to a felony.

We disagree that Hunter has established a genuine material factual issue of the State's purported bad faith. Hunter does not offer any admissible evidence of a calculated, intentional destruction of the DVD in an effort to circumvent the State's disclosure obligation under *Brady*. *See Trombetta*, 467 U.S. at 488 (ruling bad faith refers to "a calculated effort to circumvent the

---

[1] Because the exculpatory value of the DVD is unknown, *Lewis* allows for a presumption of materiality and prejudice in Hunter's favor. As a result, the State analysis under *Lewis* is more protective of Hunter's rights than the federal analysis under *Youngblood*. For this reason, we analyze Hunter's claim under *Lewis*. *Cf. State v. Edney*, 145 Idaho 694, 696, 183 P.3d 782, 784 (Ct. App. 2008) (applying standard articulated in *Lewis*).

disclosure requirements"). Absent admissible evidence of intentional concealment, Hunter's destruction of evidence claim fails. *See, e.g.*, *Youngblood*, 488 U.S. at 58 (ruling police failure to protect semen samples that may have been on victim's clothing and perform tests on semen samples was not bad faith but negligent at most); *Nelson v. State*, 157 Idaho 847, 856, 340 P.3d 1163, 1172 (Ct. App. 2014) (ruling destruction of rape kit contents not bad faith absent showing of deliberate disposal of evidence to prevent use at trial); *State v. Edney*, 145 Idaho 694, 697, 183 P.3d 782, 785 (Ct. App. 2008) (ruling destruction of methamphetamine lab was pursuant to department policy and was not bad faith); *Lewis*, 144 Idaho at 67, 156 P.3d at 568 (ruling unintentional loss of recording was not bad faith); *State v. Casselman*, 141 Idaho 592, 596, 114 P.3d 150, 154 (Ct. App. 2005) (ruling loss of photographs of victim's injuries not bad faith when no evidence police intentionally destroyed or lost them to prevent defendant from obtaining exculpatory evidence); *State v. Dopp*, 129 Idaho 597, 607, 930 P.2d 1039, 1049 (Ct. App. 1996) (ruling destruction of sweatshirt not bad faith absent evidence law enforcement disposed of it to prevent defendant from obtaining exculpatory evidence). *Compare Stuart*, 127 Idaho at 808, 907 P.2d at 785 (1995) (ruling sheriff's intentional destruction of phone logs violated defendant's due process rights).

Further, the record does not support Hunter's assertion that the DVD was destroyed in contravention of the ISP's policies. Rather, the record shows only that the DVD was originally mislabeled and then identified (albeit inconsistently) in the ISP's record system as not relating to a felony, which allowed for the DVD's destruction after five years pursuant to ISP's record retention policy. No evidence indicates the State intentionally mislabeled or misidentified the DVD in an effort to conceal the evidence. Further, the ISP employee who destroyed the DVD attested she destroyed it pursuant to ISP policy and in accordance with ISP's regular business practices. That this destruction occurred during the pendency of Hunter's original post-conviction petition establishes only coincidence, not bad faith. No evidence supports Hunter's suggestion that the ISP employee who destroyed the DVD pursuant to ISP policy (or anyone else at ISP) knew the DVD related to Hunter's pending petition. At most, the State's conduct can only be characterized as negligence.

Absent bad faith, Hunter's claim the State violated his due process rights by destroying the DVD fails, as does his argument that he is entitled to an inference under the spoliation

doctrine that the DVD would have been favorable to him. *See id.*, 127 Idaho at 816, 907 P.2d at 793 (requiring a showing of intentional destruction for inference under spoliation doctrine).

**C.    The District Court Did Not Abuse its Discretion by Denying Hunter's Motion for Continuance**

Finally, Hunter challenges the district court's denial of his motion for a continuance of the summary dismissal hearing. Hunter contends the basis for this motion was his counsel's untimely filing of his response to the State's motion for summary dismissal. Whether Hunter indeed moved for a continuance, however, is unclear from the transcript of the hearing. According to the transcript, Hunter filed a response to the State's motion approximately fifteen minutes before the hearing began, and the district court declined to consider that late filing. During the hearing, Hunter's counsel requested leave to call Hunter (who was present at the hearing) to testify presumably about the contents of the late filing. The district court denied this request because a summary dismissal hearing is not an evidentiary hearing. Then, after both parties presented oral argument, Hunter's counsel informed the district court that Hunter "may wish to make a request to the Court to proceed pro se." Thereafter, Hunter himself addressed the district court and asked to proceed pro se. The district court denied this request as untimely because "[a]rguments have been made to the Court and the record is before the Court" and also because the case had been "pending for literally years." Regardless of the actual nature of Hunter's requests at the hearing, both parties on appeal analyze the requests as a motion for a continuance. Accordingly, we also analyze Hunter's requests as such.

The decision to grant a motion for a continuance rests within the sound discretion of the trial court. *State v. Ransom*, 124 Idaho 703, 706, 864 P.2d 149, 152 (1993). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). Unless an appellant shows his substantial rights have been prejudiced by the motion's denial, an appellate court can only conclude the district court did not abuse its discretion. *State v. Cagle*, 126 Idaho 794, 797, 891 P.2d 1054, 1057 (Ct. App. 1995).

Hunter argues the district court abused its discretion because his late filing was not his fault but his counsel's fault. Fault aside, Hunter has failed to show his substantial rights were

12

prejudiced by the district court's denial of his motion. Hunter had previously filed a response to the State's summary dismissal motion. Hunter's late filing, which the district court declined to consider, was his *second* response. Accordingly, the district court's refusal to consider Hunter's late response did not deprive Hunter of an opportunity to respond to the State's motion.

Further, the information the district court declined to consider in the late filing does not relate to Hunter's claims regarding the DVD. Rather, as Hunter describes on appeal, the information relates to drug ledgers, impounded property, Hunter's rental car, and purported information about and from employees of the rental car agency. None of this information bears on whether the State violated Hunter's due process rights by not disclosing and destroying the DVD, which were the only claims properly before the district court. As Hunter's counsel acknowledged during the hearing, the DVD "was the only piece of evidence that Mr. Hunter had to warrant a successive post-conviction [petition]."

Moreover, Hunter does not challenge the basis for the district court's denial of his requests, i.e., their untimeliness. The record indicates that the State filed its summary dismissal motion more than a year and three months before the hearing occurred and that the hearing date had been previously continued as many as seven times. On appeal, Hunter specifically acknowledges "the district court's concerns about timeliness were generally reasonable" and "understandable." Based on this record, the district court did not abuse its discretion in denying Hunter's requests.

## IV.

## CONCLUSION

Hunter failed to present admissible evidence sufficient to show a genuine issue of material fact that the State violated his due process rights by failing to disclose the DVD and then destroying it. Further, Hunter failed to show the district court abused its discretion when denying his motion for a continuance. Accordingly, we affirm the district court's summary dismissal of Hunter's successive petition for post-conviction relief.

Chief Judge GRATTON and Judge LORELLO **CONCUR**.